Dr. Chester A. Brecher, Appellant, v. Dr. Russell W. Brown, Appellee.

No. 46637.

February 6, 1945.

Whitney, Whitney & Stern, of Storm Lake, for appellant.

Pike, Sias & Butler, of Waterloo, and White & White, of Storm Lake, for appellee.

Smith, J.— On March 25, 1943, the parties hereto executed a written agreement by which plaintiff employed de-

fendant as a "veterinary assistant" in Storm Lake, Iowa, *"for an indefinite period of time"* at a salary of $200 per month "until changed by further agreement."

Plaintiff agreed to furnish "all necessary tools and equipment and an automobile" for defendant's use in rendering the agreed services. Defendant agreed not to engage in any other type of work and to devote all his working hours to plaintiff's service.

The controversy here particularly involves the following paragraph of the contract:

"It is further stipulated and agreed that upon the termination of Second Party's employment by First Party that the Second Party will not engage in the practice of veterinary medicine or surgery, or any competing business to that of First Party, in Storm Lake, Iowa, or a territory within a radius of twenty-five miles of Storm Lake, Iowa, without the express written consent of the First Party."

Both parties were licensed veterinarians, plaintiff with an established practice of some ten or eleven years in that vicinity and defendant recently admitted to practice. Plaintiff also has a veterinary hospital in connection with his practice.

They operated under the agreement until December 29, 1943, when defendant quit and soon thereafter opened a veterinary office and hospital about one hundred feet from plaintiff's and engaged in practice for himself. This suit is brought by plaintiff to enjoin defendant "from the practice of veterinary medicine and surgery * * * and the operation of a veterinary hospital at Storm Lake, Iowa." The trial court denied the relief asked and plaintiff appeals.

The facts are not materially in dispute. Appellant was a close friend and classmate of appellee's older brother and knew appellee while the latter was still in veterinary college. The parties had some preliminary discussion and understanding before appellee came to Storm Lake and before the written contract was entered into. Appellee testifies appellant "said if things went along all right there would be a partnership in a year." Appellant's version is not materially different: "I * * * told him if things worked out well it might develop into a partnership."

Appellant says:

"I introduced him to my clients and started him to practice; would send him out on calls when a farmer with a sick animal would call in and we did surgery together and I introduced him to various farmers that I had been serving and sent him out to do the work for them. He had access to my books and a list of my customers and when calls from customers would come [in] and he was about the hospital he would answer the phone."

Appellee testifies to substantially the same facts and says he was always busy. When they commenced business appellant advanced $100 and placed it to appellee's credit at the bank. About four months later he increased the monthly salary to $225.

Appellee in July or August broached the subject of partnership but appellant told him he was getting in a hurry. A day or two before appellee quit in December he spoke again to appellant about it:

"* * * he [appellant] told me that the partnership was out then—that he would increase my wages but he wouldn't give a partnership for another year or so; and I asked him how much it would cost me to enter into a partnership, and all he said was it would cost me so much and I could pay it over a period of time and at a low rate of interest. Q. But he wouldn't give you the amount? A. No."

There is no further explanation of appellee's sudden decision to abandon the employment and launch out for himself, but his legal right to do so, under the contract, is not questioned.

Appellant testified that his most remote clients were one southeast of Storm Lake, twenty-six miles; one northeast, twenty-one miles; one northwest, twenty-two or twenty-three miles; and that his practice extended west of Alta and south and southwest, about fifteen miles. He said he expected to extend the area of his practice in the future.

I. Appellant argues but one proposition, viz., that the trial court erred in holding the contract unenforceable as against public policy on the ground that the restrictions therein were

unreasonable. That is the ultimate and only question for our decision.

The reasons for the early common-law doctrine banning contracts in general restraint of trade and for its gradual modification to meet changing conditions are stated at some length in Swigert & Howard v. Tilden, 121 Iowa 650, 97 N. W. 82, 63 L. R. A. 608, 100 Am. St. Rep. 374. The original ban has been lifted to admit many contracts in partial restraint but such contracts are upheld only when ancillary to contracts of sale or employment or for dissolution of partnerships or to other contracts which justify the covenantees in protecting themselves from competition. 17 C. J. S., Contracts, section 246; Reeves v. Decorah Farmers' Coop. Soc., 160 Iowa 194, 202, 140 N. W. 844, 44 L. R. A., N. S., 1104. But this does not mean that the restrictive provisions must be incident to contracts involving tangible property. Rowe v. Toon, 185 Iowa 848, 853, 854, 169 N. W. 38.

Whatever may be the subject matter of the principal contract, whether sale of good will, or for employment, or other purpose, the modern test seems to be to inquire *"whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public."* (Italics supplied.) Swigert & Howard v. Tilden, supra, 121 Iowa 650, 660, 97 N. W. 82, 85, 63 L. R. A. 608, 100 Am. St. Rep. 374. See, also, Haggin v. Derby, 209 Iowa 939, 943, 229 N. W. 257; 13 C. J., Contracts, section 419; 17 C. J. S., Contracts, section 247. "* * * the restriction must be reasonable, not oppressive, or out of proportion to the benefits which the vendee may, in reason, expect to flow from the restrictive features of the contract." Swigert & Howard v. Tilden, supra.

The rule has been thus stated:

"Generally, the tendency of the modern authorities is * * * to gauge the validity of the contract by the reasonableness of the restraint imposed as necessary to the protection of the covenantee, and as compatible with the public interest." 17 C. J. S., Contracts, section 246.

In the Restatement of the Law, Contracts, section 515, the rule, so far as is pertinent here, is said to be:

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly * * * or * * * (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment."

In the Iowa Annotations to the Restatement, Contracts, section 515, various Iowa cases are cited as "inferentially" sustaining the rule stated in (a) above. Several cases are cited as being in accord with (b).

In arriving at this modern rule, the older and more rigid tests, making the consideration of time and space conclusive according to certain formulas, have been rejected, or at least not so rigorously applied. See 17 C. J. S., Contracts, section 246. However, we still find them helpful in appraising the elusive quality of reasonableness. Under earlier decisions the courts held that restrictions unlimited as to both time and space were invalid, those limited as to time but unlimited as to space were also held invalid, while those limited as to space but unlimited as to time and those limited as to both time and space were ordinarily upheld. See discussion in 17 C. J. S., Contracts, sections 241–245.

One other principle should be stated before we proceed to the difficult task of applying general rules to the specific facts. It has been held that "restrictive stipulations in agreements between employer and employee are not viewed with the same indulgence as such stipulations between a vendor and vendee of a business and its good will." Samuel Stores, Inc. v. Abrams, 94 Conn. 248, 253, 108 A. 541, 543, 9 A. L. R. 1450. The proposition is supported by the argument that in case of the sale of good will the restriction adds to the value of what is sold, and by the further consideration that "the parties are pre-

sumably more nearly on a parity in ability to negotiate than is the case in the negotiation of agreements between employer and employee.''

■■ II. The application of the foregoing rules to the facts here is not easy. In the view we take of the law, the preliminary talk of a possible future partnership and the subsequent conversations about it leading up to appellee's abrupt termination of the relationship are not controlling or even material. Appellant never made any definite commitment on the subject of partnership and if appellee had needed a legal excuse for quitting, the attitude of appellant on that subject certainly would not have supplied it.

We have only to inquire as to the reasonableness of the restriction as a protection to appellant's rights and as a limitation upon appellee's. We are constrained to agree with the trial court that the area attempted to be reserved by appellant is much greater than reasonably necessary to his protection. The fact that he has a patron twenty-six miles away and others somewhat less remote does not fix the area of his practice as a circle with a twenty-five-mile radius. The plat produced by appellee shows that such a circle would take in parts of every county adjoining Buena Vista county and would include county seats of at least three of the adjoining counties. As pointed out by the ''findings'' of the court, it would include ''an area larger than the whole of Buena Vista County and so far from Storm Lake that it could not possibly be served by plaintiff, unless he is entitled, by taking in partners or employing a number of veterinarians to establish a clientage there.''

The restriction is entirely unlimited as to time and has no relationship to the duration of the employment which the contract expressly made indefinite. It is, of course, true that over a period of time appellee would, as appellant's assistant, have opportunity to meet appellant's clients and acquire some of the good will which he had cultivated through the years. But it is also doubtless true appellee would at the same time be accumulating some measure of good will on his own account that he would be required to abandon if the contract were enforced.

The indefiniteness in the time of employment does not render the contractual restriction without consideration but it is to be taken into account in appraising the reasonableness of the restriction which was entirely unlimited in duration.

If we were to determine the question upon the basis of the conduct of the parties toward each other our inclination would be favorable to appellant, whose treatment of his young associate, aside from the terms of the contract, seems to have been eminently fair. Nor do we desire to encourage parties generally in ignoring contracts fairly entered into.

But we have here to decide only whether the restrictive provisions of the contract meet these tests of reasonableness which we have stated. Contracts of this character, being in partial restraint of trade, are to be strictly construed. Haldeman v. Simonton, 55 Iowa 144, 7 N. W. 493; Barron v. Collenbaugh, 114 Iowa 71, 86 N. W. 53; Rapalee v. Malmquist, 165 Iowa 249, 145 N. W. 279.

Our judgment is in accord with that of the trial court. The restriction is not reasonably limited to the protection of appellant's interests and, by the same token, would impose undue hardship upon appellee and is accordingly against public policy.

We are not at liberty to write a new contract for the parties or to modify the one they wrote. It must be upheld as written or rejected. Haggin v. Derby, supra, 209 Iowa 939, 229 N. W. 257, is urged by appellant as authority for us here to "sever the good from the bad and enforce the covenant to the extent deemed reasonable." In the cited case the language of the contract, which referred to the town of Kingsley, was construed to include the trade territory adjacent thereto. Here the exact territory is expressly defined and there is left no occasion for construction.

It has been said: " 'Covenantees [in contracts of this character between employer and employee] desiring the maximum protection have no doubt a difficult task. When they fail, it is commonly because, like the dog in the fable, they grasp too much and so lose all.' " Samuel Stores, Inc. v. Abrams, supra, 94 Conn. 248, 256, 108 A. 541, 544 [quoting from Herreshoff v

634

Boutineau, 17 R. I. 3, 7, 19 A. 712, 8 L. R. A. 469, 33 Am. St. Rep. 850].

The decision is affirmed.—Affirmed.

All JUSTICES concur.