CONFORMING MATRIX CORP., APPELLANT, *v.* FABER, APPELLEE.[*]

---

(No. 4969—Decided March 18, 1957.)

*Messrs. Boggs, Boggs & Boggs,* for appellant.
*Messrs. Cobourn, Yager, Notnagel, Smith & Beck,* for appellee.

SMITH, J. This appeal is on questions of law and fact from a judgment of the Court of Common Pleas denying equitable relief to plaintiff upon a claim for breach of a contract between plaintiff, an employer, and defendant, an employee, containing restrictive covenants, whereby plaintiff seeks to enjoin defendant from engaging directly or indirectly for himself or in any

capacity as a representative or employee of others in any business which is in competition with the business of plaintiff in some 19 states, including Ohio, and in Ontario, Canada, during his employment and for a period of five years thereafter, and also from disclosing or revealing to any person, firm or corporation any of the confidential information of design, production and manufacture or of trade secrets of plaintiff. The parties are referred to herein as they appeared in the trial court, the plaintiff, appellant herein, as plaintiff, and the defendant, appellee herein, as defendant.

The undisputed evidence discloses that the plaintiff, a corporation located in Toledo, Ohio, employed some 35 employees and, since 1939, has been engaged in the business of designing, manufacturing and selling semiautomatic and fully automatic spray-painting machines, spray-painting masks, shields and stencils and spray-painting tools, fixtures and equipment, except for a period of three years, from 1942 to 1945, because of war priorities on materials. Some component parts of such equipment were purchased and others were obtained from subcontractors. The process of designing and manufacturing such machines and equipment adapted to special requirements of customers is somewhat unique, and the products are sold principally to automotive, appliance and toy industries and used for decorative purposes and display advertising.

Plaintiff's business is in a comparatively new field, requiring advertising in trade journals and magazines and extensive effort and expense in finding customers and meeting their particular requirements, distributing circulars to prospective customers and exhibiting products at trade shows. There were some six competing businesses located in the states of Ohio, New York, Michigan, Illinois and Pennsylvania.

The undisputed evidence discloses further that plaintiff sold its product and had customers in the states of Ohio, Michigan, Illinois, Massachusetts, Indiana, New York, New Jersey, Connecticut, Wisconsin, Pennsylvania, Maryland, Kentucky, Virginia, Rhode Island, Delaware, West Virginia and other states, and in Ontario, Canada; that defendant was employed by plaintiff on September 6, 1951, as plant superintendent and

chief engineer; and that on May 15, 1953, defendant signed the employment agreement with plaintiff, which was revised upon suggestions of defendant before signing. The defendant voluntarily left the employment of plaintiff about December 29, 1954, and shortly thereafter became an employee of The Rold-Rite Metal Products Company of Genoa, Ohio, which company at the time was not engaged in business competitive with the plaintiff.

The defendant is a graduate engineer of Ohio Northern University and received a master's degree from Columbia University, and is an experienced mechanical engineer. Prior to his employment by plaintiff, defendant worked at his profession as an engineer in responsible positions in other companies as an inspector of jigs, tools and dies for the production of aircraft propellers and component parts of aircraft, and for a manufacturer of war bombs and a manufacturer of dental equipment, designing special machines for that purpose. He was employed by the Rossford Ordnance Depot as "Chief of Methods Branch," and there designed, purchased and installed machines of all types for cleaning and processing parts for storage.

The record shows that defendant, during his employment with plaintiff, in his position as chief engineer and plant superintendent, had charge of the design, production and manufacturing of the machines and equipment sold by plaintiff, had frequent contact with plaintiff's customers and dealt directly with many of them in order to meet their specifications and correct and adjust the operations of equipment. He had access to the customer, cost, price, correspondence and advertising files of plaintiff. His beginning salary was in the amount of $8,400, which was increased on May 15, 1953, after the signing of the agreement, to $9,000, and was further increased on September 4, 1953, to $10,000, which salary continued until his voluntary resignation from the employment with plaintiff on or about December 29, 1954.

The evidence shows further that on or about January 2, 1955, defendant was employed by The Rold-Rite Metal Products Company, located about 12 miles distant from Toledo, Ohio. Plaintiff discovered, in the summer of 1955, that that company, employing defendant, was manufacturing and selling automatic

spray-painting machines and masks and for the first time was advertising that it was in the business of manufacturing spray-painting machines and equipment. During the first 10 months defendant worked for such company, it manufactured and delivered two spray-painting machines for McCreary Motto Company of Cambridge, Ohio, a former customer of the plaintiff, and also a spray-painting mask for the Chevrolet Division of General Motors, a former customer of plaintiff, which machines and masks substantially incorporated the designs and techniques of the products of plaintiff.

The record clearly shows that the special knowledge, experience and skill gained by defendant in his confidential relationship while working for plaintiff, partaking of the nature of trade secrets, were utilized in the manufacture of such equipment, sold and delivered to the former customers of plaintiff. Pertinent thereto, it is stated in *Briggs* v. *Butler,* 140 Ohio St., 499, 509, 45 N. E. (2d), 757, that "the fact that in the operation of a business the public may learn methods, systems and trade usages does not make such methods public property and consequently deprive an employer of any protection. Lists of customers have always been protected in equity * * *." While defendant was still in the employ of plaintiff, Mr. McCreary, of McCreary Motto Company, discussed with the defendant the design and manufacture of a machine to paint a plastic "panda bear" container to be used for Jergens Lotion, plaintiff having made some experimental masks to paint the container, and the spray-painting machines and equipment furnished therefor by The Rold-Rite Metal Products Company were for that specific purpose. Defendant participated in talks with the representative of that company at the time the order was given for the machines.

The defendant later left the employ of The Rold-Rite Metal Products Company when that company was advised of the provisions of the employment contract between defendant and plaintiff. There is no evidence that the contract operated as an unreasonable hardship on defendant; he could practice his profession generally as an engineer anywhere other than in competition with the specialized business of plaintiff, and he has been so employed. Such limited restraint of trade would

not be in contravention of public policy. *O. Hommel Co., Inc.,* v. *Fink,* 115 W. Va., 686, 177 S. E., 619; *May* v. *Young,* 125 Conn., 1, 2 A. (2d), 385; *A. Hollander & Son, Inc.,* v. *Imperial Fur Blending Corp.,* 2 N. J., 235, 66 A. (2d), 319.

The restrictive covenants of the contract before this court can not be said to be *ipso facto* unenforcible as against public policy and void *ab initio.* To so hold would deprive the plaintiff of his right in a court of equity to a consideration of the reasonableness of such covenants under the peculiar facts of his case. The general rule evolving out of a myriad of decisions in this country and England is succinctly stated in 17 Corpus Juris Secundum, 636, Section 254, as follows:

"* * * it is the rule in the absence of contrary statute that agreements by which an employee, as part of his contract of employment undertakes not to enter into a competing business on leaving his employer's service are sustained if they are no wider than reasonably necessary for the protection of the employer's business, and do not impose undue hardship on the employee, due regard being had to the interests of the public."

The case of *Briggs* v. *Butler, supra,* is analogous to the facts and law applicable thereto in this case. There, the contract was for personal services and the restrictive covenant was for a period of five years over an area defined, including Toledo, Ohio, and any city, town, burrough, township or other place in the United States and Canada in which the employer was engaged in business. The contract anticipated that the employer would be so widely engaged in his business. In that case, the evidence disclosed a breach of the contract by employment in a competing business in Toledo, Ohio. In the case before this court, the undisputed evidence shows a breach by defendant of his contract by employment in a competing business in Genoa, Ohio, as well as by his using his special knowledge, skill and experience, gained while employed by the plaintiff, to manufacture a like product as that of plaintiff, and that defendant participated in the sale of same to a former customer of the plaintiff in Ohio.

The Supreme Court in the *Briggs case, supra,* had no difficulty in granting injunctive relief for the proved breach of the contract, notwithstanding some other decisions in Ohio employ-

ing a strict, if not legalistic, construction of the restrictive covenants peculiar to the facts in those cases, such as restrictive covenants in an outright sale of a business or to create a monopoly. Such construction upon the facts in the record in this case would circumscribe the broad powers of a court of equity to grant relief under the rule of reasonableness, whether upon the basis of the divisibility of the terms of the contract or for partial equitable relief upon the undisputed evidence as to a breach within a part of a limited and defined area. It is stated in the opinion in the *Briggs case, supra,* on page 511, that:

"The conclusion reached upon the particular facts in this case are in no wise inconsistent with the results reached and announced in the following cases, each of which involved conditions imposed in contracts involving the purchase and sale of interests in business: *Lange* v. *Werk,* 2 Ohio St., 519; *Thomas* v. *Admr. of William P. Miles,* 3 Ohio St., 274; *Morgan* v. *Perhamus,* 36 Ohio St., 517; *The Lufkin Rule Co.* v. *Fringeli,* 57 Ohio St., 596; or in *Curry* v. *Marquart,* 133 Ohio St., 77, which involved an employment contract containing no restrictive covenant whatever."

The evidence adduced as to a breach of the contract pertains to competitors and customers of plaintiff in the state of Ohio, and, therefore, plaintiff is reasonably entitled to injunctive relief in this state for the five-year period ending December 29, 1959.

This court, having jurisdiction to consider damages in connection with equitable relief, finds the evidence as to damages claimed by plaintiff to be suffered by reason of the breach of the contract to be insufficient to warrant an award of monetary damage, which is, therefore, denied.

*Decree accordingly.*

FESS and DEEDS, JJ., concur.