82 N.J. Super. 508 (1964)
198 A.2d 136
HUDSON FOAM LATEX PRODUCTS, INC., HUDSON CHEMICAL CORPORATION, HUDSON FOAM PLASTICS CORPORATION AND HUDSON CUSH-N-FOAM CORPORATION, PLAINTIFFS-APPELLANTS,
v.
MEYER C. AIKEN AND NOPCO CHEMICAL COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1964.
Decided March 10, 1964.
*510 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Burtis W. Horner argued the cause for appellants (Mr. Clifford J. Sheehan, on the brief; Messrs. Stryker, Tams & Dill, attorneys).
Mr. Willard G. Woelper argued the cause for respondent Nopco Chemical Company (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys).
Mr. John J. Gibbons argued the cause for respondent Meyer C. Aiken (Messrs. Crummy, Gibbons & O'Neill, attorneys).
Mr. John B.M. Frohling, on the joint brief for respondents.
*511 The opinion of the court was delivered by FREUND, J.A.D.
Plaintiffs brought an action in the Superior Court, Chancery Division, seeking (1) to restrain defendant Aiken, a former employee, from performing services for defendant Nopco (a competitor of plaintiffs) for a period of one year, under a provision of the employment contract between plaintiffs and Aiken; (2) to restrain Aiken "from divulging any information to the defendant Nopco," under another provision of the employment contract as well as under Aiken's "duty of loyalty" to plaintiffs, and to restrain Nopco from receiving or using any such information; and (3) compensatory and punitive damages from Nopco for an alleged unlawful interference with plaintiffs' contractual relationship with Aiken, and an injunction restraining Nopco from continuing to employ Aiken for a period of one year.
Defendants moved for "summary judgment dismissing the complaint." The trial court found that two provisions of the employment contract, one involving a restraint against Aiken's employment by a competitor for a period of one year, and the second involving a covenant not to reveal information concerning the products manufactured by plaintiffs, were "so broad as to be unreasonable and therefore incapable of enforcement," and granted summary judgment in favor of both defendants. Plaintiffs then moved to amend their complaint "to assert with more particularity a cause of action based on an implied duty not to disclose trade secrets." It was claimed by plaintiffs that a cause of action based upon common law principles was included in their original complaint, because the words "and in breach of his duty of loyalty" were mentioned in addition to the charge that Aiken was "in violation of his contract." On rehearing the trial judge admitted that he had not considered these words as stating a common law cause of action, but refused to change his determination in favor of defendants, and denied plaintiffs' motion to amend the complaint. He made it clear, however, that this ruling was not to be taken as involving prejudice to the right of plaintiffs to bring an action, based upon common law principles, *512 for disclosure of trade secrets. From the denial of their motion to amend the complaint, and from the final judgment dismissing the complaint, plaintiffs now appeal.
Plaintiffs are related New York corporations, duly licensed to do business and having their principal offices in New Jersey. They are engaged in the manufacture and sale of polyester and polyether flexible foam cushioning and insulating materials. As already noted, defendant Nopco is a competitor in this field. Defendant Aiken was employed as a supervisor of the cutting and packaging phase of plaintiffs' operation from 1953 until April 1959, when he resigned following an injury to his hand at one of plaintiffs' plants. During this period Aiken was not under an employment contract. Later in 1959 Aiken returned to the employ of plaintiff Hudson Foam Latex Products, Inc. on a temporary basis. In October of that year Aiken was offered a permanent position provided he signed an employment agreement, and he accepted.
Section 7 of that employment contract provides:
"The Employee undertakes and agrees that he will not, for a period of one (1) year immediately following the cessation of his employment and severance of his connections with the Employer (i.e., one year after his employment by the Employer in any capacity whatsoever shall have wholly terminated) enter the services or employ of any person, firm, partnership or corporation engaged in any business similar to that of the Employer, i.e., the manufacture, production and/or sale of polyester, polyether, and polyformal foams and elastomeric products and/or the components or ingredients essential to and/or suitable for the manufacture and production of said products (i.e., diisocyanates, the complementory polyfunctional components catalyst systems and foam regulating additives) nor will said Employee be any wise in any manner (directly or indirectly) associated with any such person, firm, partnership or corporation during such period of one (1) year."
We are in agreement with the conclusion of the trial court that this provision is so unreasonably broad as to be unenforceable. Contracts which impose restraints upon the right of an employee to work for competitors after terminating employment with the promisee are not, of course, invalid per se. A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., *513 2 N.J. 235, 248 (1949). See generally, Blake, "Employee Agreements Not To Compete," 73 Harv. L. Rev. 625 (1960). But the legitimate interests of an employer against having an individual, whose ofttime highly specialized training was gained at the time and expense of the employer, leave that employer and exercise his thusly acquired skill and perhaps good will for the benefit of a competitor is naturally subject to the competing interests of the employee's right to work and society's interest in free competition and trade. The balance is struck thusly: if the contractual prohibition is reasonably necessary for the protection of the employer's business and at the same time is neither unreasonably restrictive of the rights of the employee with regard to time period or territory, nor prejudicial to the public interest, it will be enforced. A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., supra, 2 N.J., at p. 248. See also Wyder v. Milhomme, 96 N.J.L. 500, 503 (E. & A. 1921); Trenton Potteries Co. v. Oliphant, 58 N.J. Eq. 507, 514-15 (E. & A. 1899); Chas S. Wood & Co. v. Kane, 42 N.J. Super. 122, 124 (App. Div. 1956).
While the time limitation in the instant case  one year  is no doubt not unreasonable as a matter of law, the lack of any limitation upon the area in which Aiken is forbidden to work during that period is manifestly oppressive, for if enforced it would effectively preclude for an entire year his taking a job in the only field in which he has any special training. Plaintiffs concede, as they must, that this area provision is troublesome; they contend, however, that it should not be held unreasonable as a matter of law. Since plaintiffs do not allege that they do business in every State in this Union and in every foreign country in the world, we are hard put to imagine any set of circumstances under which so broad a restriction in the field of the manufacture and sale of foam products could be deemed reasonable.
Where the territory specified in a post-employment restraint is greater than that to which the business extends, the restriction is unenforceable. Creter v. Creter, 52 N.J. *514 Super. 197, 201 (App. Div. 1958); see also Art Wire & Stamping Co. v. Johnson, 7 N.J. Super. 173, 179 (App. Div. 1950). As stated by Professor Corbin, "the restriction is deemed excessive ab initio if its limit in either space or time is greater than is necessary for the employer's protection against `unfair' competition." 6A Corbin, Contracts (1962), § 1394, pp. 94-5. (Emphasis added) The cases of Artistic Porcelain Co. v. Boch, 76 N.J. Eq. 533, 536-37 (Ch. 1909), and Voices, Inc. v. Metal Tone Mfg. Co., Inc., 119 N.J. Eq. 324, 330 (Ch. 1936), will not sustain plaintiffs' position. In the former case an agreement not to compete for five years, without any limitation as to area, was upheld; in the latter, a similar agreement involving "the United States or its territories" for a period of 18 years was held reasonable. Both involved, however, agreements by sellers of businesses, not employees. The substantial disparity in bargaining positions between a seller and a buyer, and an employee and an employer, is more than sufficient to warrant a heavier reliance on the terms of a contract in the former instance than in the latter. Furthermore, the Creter case, supra, has to a great extent supplanted the authority stated in those cases.
In Creter the parties (who were brothers) were partners in the business of manufacturing and selling burial vaults. Their partnership agreement included a provision that if either terminated his interest in the business he would not, directly or indirectly, carry on a similar business "within the State of New Jersey for a period of five (5) years." It was held that this provision was unenforceable because the area provision was greater than necessary for the protection of the business, the partnership not having conducted business in all counties in the State. Since the restriction mentioned only the State of New Jersey without designating counties, the court refused to indulge in "selective construction," i.e., extracting from an area restraint such portions as could be deemed necessary to the protection of the employer's business, and enforcing just those portions. See Trenton Potteries Co. v. Oliphant, supra, 58 N.J. Eq., at pp. 517-18.
*515 The court in Creter stated that the doctrine of selective construction was appropriate only where the language of the agreement was "such as to permit a reasonable denomination of more than one area." Our conclusion to invalidate the covenant quoted above follows a multo fortiori from the Creter opinion. First, plaintiffs' bargaining position with Aiken was manifestly much stronger than that which may be presumed to have existed between the two brothers in Creter. Second, and more important, the area of restraint in the instant case is immeasurably greater than that in Creter. There being no mention of any area whatever in the restriction, we cannot undertake to prescribe the extent to which the provision in question might be recognized as binding. Cf. 13 Rutgers L. Rev. 393-96 (1958). The fact that plaintiffs "have sold these foams in many parts of the world, including the continental United States, Canada, Central America, South America, South Africa, Puerto Rico, Hong Kong, Hawaii and Australia," and have "a world wide patent position," cannot justify a flat prohibition against Aiken's working in this field for anyone, anywhere, for one year. Section 7 of the employment contract between plaintiffs and Aiken is totally unenforceable.
Plaintiffs claim that they are entitled to an injunction restraining Aiken from divulging "any information" to Nopco and restraining Nopco from "receiving or using any such information." Section 2(c) of the employment contract provides:
"The Employee shall at all times (whether during his employment hereunder or thereafter), keep secret and shall not divulge to any other person, firm, partnership or corporation, and any information with respect to the products manufactured by the Employer or which the Employer may contemplate manufacturing, or may hereafter manufacture, or with respect to any machinery, equipment, processes, devices, methods, etc., now or hereafter used by the Employer or which it may now or hereafter be entitled to use, nor any other information of whatever kind or nature, obtained by him in the course of employment, nor shall said Employee make any use of such information except for and on behalf of the Employer. It is the intention of the parties hereto that this non-disclosure provision shall be given the *516 broadest possible construction so as to prevent the Employee from making any disclosure whatever of any information or knowledge reaching him."
There can be no doubt that if construed literally this provision, too, would be totally unenforceable because of its unreasonably broad reach. See Taylor Iron & Steel Co. v. Nichols, 73 N.J. Eq. 684, 687 (E. & A. 1908). For under the terms of this agreement Aiken would not only be forbidden from divulging any information learned in the course of his employment for plaintiffs, whether such information be secret or not, but would also be precluded from using any of the know-how he had acquired during his employment for plaintiffs for any other employer. This would be tantamount to prohibiting Aiken from ever using in another job the experience gained in his ten years with plaintiffs. The question is whether this language can be construed so as to render the covenant reasonable with regard to the circumstances of the case. Such an interpretation is preferred over one which would nullify the covenant. Chas. S. Wood & Co. v. Kane, supra, 42 N.J. Super., at p. 128. We are urged to use this rule of construction so as to render the covenant enforceable, at least to the extent of the common-law duty of loyalty owed by an employee in the position of confidence to his employer. See Sun Dial Corp. v. Rideout, 16 N.J. 252, 259, affirming 29 N.J. Super. 361 (App. Div. 1954).
Although as a general rule we favor that interpretation of contracts which will render the language enforceable, we do not think such an approach is appropriate in the present case. It must be remembered that restrictions such as those included in section 2(c) above often go unchallenged. Employees, believing themselves bound by the restrictions in their employment contracts, no matter how broadly stated, may be intimidated by such language to the extent of forbearing gainful employment in positions which ostensibly fall within the covenant, perhaps thereby allowing their best talents to go unused. Employers should not be permitted to include the broadest possible restrictions in an employment *517 contract, thus achieving the greatest possible amount of protection for themselves, to the unreasonable restriction of an employee's right to use his skills to the best advantage, and then be enabled to enforce so much and so many of the restrictions as can be found by a court to be reasonable under the circumstances. If such were the rule, it would afford employers an unconscionable advantage over their employees. See Blake, supra, 73 Harv. L. Rev., at pp. 683-4. This non-disclosure provision, even without the clause stating the intention to give it "the broadest possible construction so as to prevent the Employee from making any disclosure whatever of any information or knowledge reaching him," is overreaching. The restraints extend so far beyond what the employer can legitimately expect to be protected as to be patently unreasonable. Attempts by this court to distill from the broad generalities contained therein narrower and more meaningful restrictions would constitute no less than a rewriting of the provision. Section 2(c) of the employment contract is totally unenforceable.
Plaintiffs contend that in addition to his contractual obligations Aiken owes them a separate duty, based upon common law principles, not to disclose trade secrets. Cf. Art Wire & Stamping Co. v. Johnson, supra, 7 N.J. Super., at p. 178; with which compare Sun Dial Corp. v. Rideout, supra, 16 N.J., at p. 259. They argue that their proposed amendment to the complaint, setting forth a cause of action based upon a common law duty of loyalty, should have been allowed. Although leave to amend pleadings "shall be freely given when justice so requires," R.R. 4:15-1, such matters are normally left within the discretion of the trial court. Here the application for leave to amend was made after the trial judge had rendered his decision in favor of both defendants. Since the judgment against plaintiffs expressly reserves their right of action "for breach by Meyer C. Aiken of any non-contractual common law duty with respect to trade secrets," they have suffered no significant prejudice. This being so, we find no reason to interfere with the trial court's ruling.
*518 The final count of plaintiffs' complaint alleges Nopco's "interference with the contractual relationship between the plaintiffs and the defendant Meyer C. Aiken." The affidavits of all the parties indicate clearly that the conduct of Nopco in dealing with Aiken was in no way tortious.
Affirmed.