HOWARD BAKER et al., doing business as PROFESSIONAL MANAGEMENT MIDWEST, appellants, v. RICHARD G. STARKEY, appellee.

No. 52132.

482

SEPTEMBER 20, 1966.

Swisher, Cohrt, Swisher, Finch & McCann, of Waterloo, for appellants.

Beecher, Buckmaster, Beecher, Holmes & Lindeman, of Waterloo, for appellee.

MASON, J.—This is an action in equity wherein plaintiffs, all copartners in a partnership known as Professional Management Midwest, seek to enjoin defendant, a former employee, from engaging in certain lines of endeavor for three years or until February 1, 1967, in several cities and towns in ten states.

Specifically, plaintiffs seek to enforce paragraph 3 of an employment contract entered into between them and defendant October 4, 1963. Defendant asserts the contract is unenforceable as an undue restraint of trade because its restrictions both as respects the geographical area involved and the length of time are unreasonable.

The trial court decided the restrictive provisions of the employment contract were reasonable as to the length of time of the restraint (three years), but unreasonable as to the area included; the restrictive covenant, being invalid as a whole, could not be enforced in part, the equities were with defendant and dismissed the case. From this decree plaintiffs appeal.

Several issues were presented upon the trial; however, it is agreed the only issue presented on appeal is whether a court in equity should partially enforce, to the extent reasonable under the circumstances, a restrictive covenant in a contract of employment which by its written terms is too broad in scope of area or time to be itself reasonable.

This issue presents the question whether a court will enforce such an agreement in part while holding the remainder invalid.

I. Professional Management Midwest has its principal office in Waterloo with regional offices in Minneapolis and Kansas City, Missouri.

Plaintiffs are engaged in supplying bookkeeping and management consultant services to practitioners in medicine and dentistry throughout a substantial portion of the midwest. The business dates back to approximately 1949, currently serves approximately 1500 doctors and has a male staff of 42 and female staff of 15.

For sake of brevity, plaintiffs will be referred to as P. M.

M. Under the organization and methods by which it conducts its business, a number of "consultants" are employed on a base salary and commission basis to make monthly calls on each doctor or dentist served by plaintiffs for the purpose of supervising the accuracy of the financial records of the customer, preparing certain statements of profit and loss and other financial summaries to be presented to the customer, to check and supervise the conduct and business operations of the employees of the customer and to consult with the customer, if desired by him, on a rather broad range of matters pertaining to his practice, personal finances and management.

At appropriate times the "consultants" assist with the preparation of income tax returns, matters of office layout and design, partnership contracts and relationships, and personal financial and estate planning. The consultants will also advise the customer in connection with insurance matters.

In none of these areas do P. M. M. or the consultants seek to supplant or replace services customarily in the province of other occupations or professions. Neither do they seek to replace the customer's consultation with insurance salesmen or agents in casualty, liability, or life fields. Nor do they seek to replace the customer's relationship with an attorney in connection with partnership agreements and relationships, wills and estate planning.

P. M. M. is not unique in offering this service. Neither is it the first to establish such a business. There are several other medical and dental consultants throughout the United States.

Over the years, and borrowing heavily from many sources, the partners of P. M. M. have developed a set of principles, together with internal operating techniques, which they have systematized and described in a wide range of manuals and pamphlets. The partners have also specialized to some extent among themselves as to the areas in which they have sought to become proficient, and different partners at different times, somewhat on a more or less regular basis, prepare materials in particular fields, such as office management, estate planning and tax matters, which are furnished the consultants for use

in their contact with customers. As the business has evolved the partners themselves have little if any direct contact with the customers, but rely upon the consultants operating under supervisors who in turn are responsible to the partners. The consultants are paid on a commission basis up to 40 percent of billings to the customer with the balance going to the partnership.

December 17, 1956, defendant contacted plaintiffs in response to a newspaper advertisement and applied for employment. Following certain testing defendant was employed by plaintiffs and the employment contract was executed December 26, 1956. Defendant was a graduate of Drake University with a degree of Bachelor of Science in business administration, had previous employment as field executive for the boy scouts in Mason City, employment with Remington Rand in Davenport and three years' service as a district executive for the boy scouts in Waterloo, working in an area council which covers a substantial part of northeast Iowa. Defendant was furnished a set of manuals and other materials prepared by P. M. M.

Testimony offered by P. M. M. indicates that after being furnished the manuals in the latter part of December 1956, defendant accompanied another consultant on certain calls to doctors in the Davenport area for a short period in January 1957. From the last week of January to February 22, 1957, he accompanied Mr. George Lehigh on his "rounds" as he serviced the accounts defendant was to take over upon Lehigh's retirement on the latter date. Thereafter defendant serviced these accounts himself, with substantial consultation with one or the other of the partners. P. M. M.'s evidence also indicates defendant attended monthly training meetings of the consultants during 1957. In addition he had frequent informal conferences with Mr. Mills, an original partner of P. M. M. since deceased. Defendant was provided with manuals and pamphlets dealing with specific matters covered generally in the literature first furnished him and to a certain extent updating this material. He continued his employment throughout subsequent years including 1963, during which time his earnings from P. M. M. rose from $6232.25 in 1957 to $10,183 in 1963.

Defendant, conceded to be one of the leading consultants and used as a speaker in training meetings held by P. M. M. in 1963, became dissatisfied with his employment status. P. M. M. tendered a new employment contract defendant at first declined to execute, and for several months matters continued at somewhat of a stalemate with several meetings between defendant and one or more of the partners of P. M. M. Finally, just prior to a scheduled meeting to discuss the matter with certain partners on October 4, 1963, he executed the contract, the subject of this lawsuit, which replaced the first agreement.

January 1, 1964, defendant gave P. M. M. thirty days' notice of termination of employment as provided in the contract, also notice of his intention to continue in the same occupation. Acknowledgment of this notice by P. M. M. called attention to the provisions of paragraphs 3, 4 and 5 of the October 4 contract.

Defendant did terminate his employment and remained in the same business in Waterloo and northeast Iowa. At time of trial he had as personal customers 14 doctors or medical partnerships who had been customers of P. M. M., serviced by defendant prior to termination of employment, out of a total of 30 such accounts.

II. Plaintiffs' original petition seeks an injunction to restrain defendant for three years from acting as a consultant in any town or city in the continental United States in which plaintiffs were serving clients at the time of termination of his employment. A division seeking to enjoin defendant from engaging as a consultant within that geographical area assigned to defendant during the period of employment by plaintiffs was added by amendment. The prayer of this division was subsequently stricken and a second amendment filed, seeking to enjoin defendant from serving a client within those cities and towns where he was serving a client of plaintiffs prior to termination of his employment or, in the alternative, such other equitable enforcement of the restrictive covenant of the employment contract as might be deemed just and proper. The alternative relief was asked on the theory that even if the contract as written might be so broad as to the area involved as to constitute unreasonable restraint upon defendant, nevertheless, P. M.

M. was entitled to some or substantial relief, and the court should enforce the restrictive covenant to a reasonable extent.

Paragraphs 3, 4 and 5 of the October contract provide:

"3. Upon termination of this agreement, or the employment of Second Party, Second Party hereby agrees not to enter into, work for, solicit for or engage in any way, directly or indirectly, as an individual, employee, officer, partner or other business associate of any proprietorship, partnership, association, corporation or other business enterprise engaged in the business of accounting and management services to the medical and dental professions, *in any town or city in the continental United States in which P. M. M. is rendering services to clients at the time of such termination of this agreement* or the employment of Second Party, for a period of three years from such termination date.

"4. Second Party further agrees that during the existence of this contract and for a period of three years after the termination of this contract, he will not engage himself either as a partner, stockholder, or employee of a business enterprise engaged in the business of accounting and management services to the medical and dental professions that is associated with P. M. M. by means of a working agreement or has been thus associated for the two years preceding termination of this agreement.

"5. Upon the termination of his employment, Second Party further agrees that he will not directly or indirectly engage himself as a hospital or clinic manager or administrator of any hospital or clinic served by P. M. M. at any time during the existence of this contract, for a period of three years after the termination of this contract" (emphasis added).

The scope of the italicized clause of paragraph 3 is illustrated by plaintiffs' list of "the towns and cities" in the continental United States in which P. M. M. was rendering services to a client on January 31, 1964. It includes virtually every important population center in Iowa, a number of the more populous cities in Illinois outside of the Chicago area, most of the population centers of Minnesota other than Rochester and Duluth, and most or all of the main population centers of Mis-

souri, Kansas and Nebraska. In addition it includes the largest population centers of Arizona, and one of the two largest in Oklahoma together with small towns in North Dakota and Wisconsin.

Paragraph 4 would preclude defendant from working for a number of other concerns, some of which have interlocking arrangements or affiliation agreements with P. M. M., in Bozeman, Montana, Louisville, Kentucky, and Los Angeles.

The December 1956 contract while containing restrictive provisions was not as comprehensive and broad in scope of territory.

III. Plaintiffs' appeal assigns as propositions for reversal the trial court's failure to enjoin defendant from (1) serving as management consultant in those cities and towns where he was serving one or more of plaintiffs' clients at the time of termination of his employment, (2) serving as management consultant to those clients serviced by him during his time of employment with plaintiffs, and (3) serving as management consultant in the area and for the time as would have been deemed reasonable and equitable under the circumstances.

Plaintiffs are asking for enforcement of paragraph 3 of the employment contract to the extent that defendant be enjoined from serving as his own clients doctors with practices in those cities and towns where he was serving plaintiffs' customers at termination of his employment or in the alternative for such equitable enforcement of the restrictive covenant as might be deemed reasonable and proper under the facts and circumstances. Under the latter they contend defendant should at least be enjoined from serving as his own clients those 14 he now serves who were formerly plaintiffs' clients and serviced by defendant.

Plaintiffs frankly admit that in alleging error in failing to grant them equitable relief by enjoining defendant from serving as management consultant in the area and for the time deemed reasonable and equitable under the circumstances, they are asking us to overrule Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377. The trial court felt bound by this decision. There at page 633 of 235 Iowa, page 380 of 17 N.W.2d, we stated:

"We are not at liberty to write a new contract for the

parties or to modify the one they wrote. It must be upheld as written or rejected." We have held this many times in various cases involving other types of contracts. See Smith v. Stowell, 256 Iowa 165, 170-172, 125 N.W.2d 795, 798, 799, and citations.

The rule was affirmed that a contract in restraint of trade is to be gauged by the reasonableness of the restraint imposed as necessary to the protection of the covenantee and compatibility with public interest. Cogley Clinic v. Martini, 253 Iowa 541, 547, 112 N.W.2d 678, 681.

A contract in restraint of trade which gives greater protection to the employer than is required is unreasonable. Cogley Clinic v. Martini, supra, 253 Iowa, at 549, 112 N.W.2d, at 682.

IV. After disposing of the time element of the employment contract by concluding a three-year period in itself is not unreasonable in the light of our cases, the court observed the real battleground lies in the inner relationship between the type of service performed and the size of the restricted area.

Plaintiffs contend P. M. M. developed a very unique and specialized method of operation, furnished defendant with a very substantial volume of training in this method of operation and therefore is entitled to protection against his use of such skills in competition with P. M. M. in any city or town in which it was engaged in business at the time of defendant's termination.

The trial court held the training and nature of the business operation of P. M. M. did not rise to the level of business or trade secrets which might entitle plaintiffs to enforcement of the covenant in full on that theory and the training and business experience received by defendant during his employment were not sufficiently unique to give P. M. M. a special standing in equity on some basis other than the rule pertaining to genuine trade or business secrets. For a discussion of the business or trade secret theory see Arthur Murray Dance Studios of Cleveland v. Witter, 62 Ohio Law Abstract 17, 105 N.E.2d 685, 709, 710 (Ohio Com. Pl.).

The court further held plaintiffs' evidence established only a small fraction of P. M. M.'s customers in Iowa, let alone in its entire operation, ever became acquainted with defendant

and thus the area of customer contact, another matter to .be considered in connection with the size of the restricted area, apart from the type of training, was not sufficient to entitle plaintiffs to the relief asked. For a discussion of the customer contact theory see annotation, 41 A. L. R.2d 15, 71.

The court finally concluded the restrictive covenant sought to be enforced is entirely too broad in that it is far greater than necessary to protect the interest of the employer and is oppressive to the employee to a degree that is out of proportion to any benefits which the employer may in reason expect to secure. Summarizing the present Iowa law to hold the contract as written must be reasonable when enforced in full or when given its full effect, and if so found to be unreasonable as so enforced, it will not stand, the court felt it was left no alternative but to dismiss the cause.

V. This is an action in equity and it is our duty to consider and determine the case anew. Rule 334, Rules of Civil Procedure. We give weight to the findings of the trial court but do not abdicate our function as triers de novo on appeal. Vilter v. Myers, 255 Iowa 818, 821, 123 N.W.2d 334, 337.

We agree with the trial court's holding the three-year period in the restrictive covenant in itself is not unreasonable. Cogley Clinic v. Martini, supra, 253 Iowa, at 548, 117 N.W.2d, at 681.

We also agree the restrictive covenant was unreasonable under the circumstances as to the area included. Here there is no showing that the rights of the public are in danger. Where the public interest is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. Cogley Clinic v. Martini, supra; Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 312, 340 S.W.2d 950, 951.

The restrictive covenant must bear some relation to the activities of the employee. It must not restrain his activities in a territory into which his former work had not taken him or given him the opportunity to enjoy undue advantage in later

competition with his employer. Weatherford Oil Tool Co. v. Campbell, supra, 340 S.W.2d, at 952.

In determining the question of reasonableness as to area and time, restrictive stipulations in agreements between employer and employee are not viewed with the same indulgence as such stipulations are between a vendor and vendee of a business and its good will. The proposition is supported by the argument that in case of the sale of good will the restriction adds to the value of what is sold, and the parties are presumably more nearly on a parity in ability to negotiate than in negotiation of agreements between employer and employee. Brecher v. Brown, supra, 235 Iowa, at 631, 17 N.W.2d, at 379; Fullerton Lumber Co. v. Torborg, 270 Wis. 133, 70 N.W.2d 585, 588, and citations; Restatement, Contracts, section 515, comment (b). So a much greater scope of restraint is allowed between vendors and vendees than between employers and employees. There is a small scope for the restraint of the right to labor and trade and a correspondingly small freedom of contract.

As between employer and employee there are some considerations leading to invalidity of contract that are absent as between buyer and seller. 6A Corbin on Contracts, section 1394. In all these cases the facts must be carefully scrutinized to determine whether the employee is restrained beyond the point where he could be reasonably anticipated to injure his employer's business. The evidence does not establish that P. M. M. needs the aid of a court of equity to prohibit defendant from engaging in services as management consultant to the medical and dental professions in the principal cities of Minnesota, Missouri, Kansas and Nebraska, let alone most of the cities in Iowa, in order to adequately protect itself against the loss of its customers which has occurred here.

The restrictive provision being unreasonable as to the area included is illegal.

VI. While urging us to sustain the trial court's ruling as a correct application of the present Iowa law defendant contends, even if we were to overrule Brecher v. Brown by holding a restrictive covenant in an employment contract may be partially enforced and direct the trial court to reduce the extent of

the territory to one which is reasonably necessary to protect plaintiffs' business against competition of defendant for the three-year period, this covenant is so unconscionable even partial enforcement should not be allowed and that plaintiffs have failed to establish the reasonableness of even partial performance.

Before deciding defendant's contentions we will first determine the future of Brecher v. Brown, supra.

Plaintiffs urge us to adopt what they call the better rule, asserting the modern tendency is to partially enforce a restrictive covenant not violative of federal or state law and not made in bad faith on the part of the employer, but is so broad as to area and time as to be unreasonable. We are told the rule is that if such covenant is too broad as to time or area, or both, equity may enforce it to the extent reasonable under the circumstances.

They cite decisions of the Court of Appeals from the First, Third, Fifth and Sixth Circuits, the Federal District Court for the Southern District of New York and 21 state jurisdictions as supporting the above rule, as well as the authority of Professors Corbin and Williston.

We recognize that the rule of partial enforcement of indivisible promises would be a departure from our prior position.

Plaintiffs make no claim that the area restraint of the present employment contract is divisible. Rather we are urged to apply "the doctrine of 'selective construction' whereunder a court, if it can find anything in the language of the covenant designating a specific portion of the entire restricted area to which the restriction can reasonably be confined, will do so," Creter v. Creter, 52 N. J. Super. 197, 203, 145 A.2d 149, 153, that is, extracting from an area restraint such portions as could be deemed necessary to the protection of the employer's business, and enforcing just those provisions. Hudson Foam Latex Products, Inc. v. Aiken, 82 N. J. Super. 508, 198 A.2d 136, 139, 140. See also Trenton Potteries Co. v. Oliphant, 58 N. J. Eq. 507, 517, 518, 43 A. 723, 727, 46 L. R. A. 255, 78 Am. St. Rep. 612.

"This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so much authority it drowns him." Arthur Murray

Dance Studios of Cleveland v. Witter, supra, 105 N.E.2d, at 687.

There is great contrariety of opinion on various aspects involving the enforcement of post employment restraints in employment contracts as to time, space and activity. Redd Pest Control Co. v. Heatherly, 248 Miss. 34, 157 So.2d 133, 135, and citations.

The many cases involving employee restraints based on customer relationships indicate quite clearly that business enterprises recognize the desirability, even necessity of protecting the business from loss of customers by the activities of former employees who have peculiar knowledge of it and relationships with the employer's customers.

■ Contracts which impose restraints upon the right of an employee to work for competitors after terminating employment with the promisee are not, of course, invalid per se. Swigert & Howard v. Tilden, 121 Iowa 650, 658, 97 N.W. 82, 84, 63 L. R. A. 608, 100 Am. St. Rep. 374; Hudson Foam Latex Products, Inc. v. Aiken, supra, 198 A.2d, at 138; Bennett v. Storz Broadcasting Co., 270 Minn. 525, 134 N.W.2d 892, 898.

■■ Under a reasonable contract the employer is entitled to be protected against an employee's use of trade secrets and personal influence with customers he had gained in such employment. "But the legitimate interests of an employer against having an individual, whose ofttime highly specialized training was gained at the time and expense of the employer, leave that employer and exercise his thusly acquired skill and perhaps good will for the benefit of a competitor is naturally subject to the competing interests of the employee's right to work and society's interest in free competition and trade. The balance is struck thusly: if the contractual prohibition is reasonably necessary for the protection of the employer's business and at the same time is neither unreasonably restrictive of the rights of the employee with regard to time period or territory, nor prejudicial to the public interest, it will be enforced." Hudson Foam Latex Products, Inc. v. Aiken, supra, 82 N. J. Super., at 513, 198 A.2d, at 138, 139.

■ On the other hand, an employer has no right to unnecessarily interfere with the employee following any trade

or calling for which he is fitted and from which he may earn his livelihood and he cannot be precluded from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment.

We have previously said that the contractual prohibition in the employment contract was not necessary in order to adequately protect plaintiffs' interest from loss of customers.

In 6A Corbin on Contracts (1962), section 1390 states that with respect to partial illegality, the real issue is whether partial enforcement is possible without injury to the public and without injustice to the parties themselves, and that such enforcement is quite possible in the great majority of cases. The author concludes that in the best considered modern cases the courts have decreed enforcement against defendants whose breach occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement impose larger and unreasonable restraints.

It is stated in section 1660, 5 Williston on Contracts (Rev. Ed.) (1937), that the tendency of the late American cases has been toward the view that the legality of contracts in restraint of trade should not turn upon the mere form of wording but rather upon the reasonableness of giving effect to the indivisible promise to the extent it would be lawful. Redd Pest Control Co. v. Heatherly, supra, 157 So.2d, at 135.

We cite a few of what Professor Corbin terms the best considered modern cases wherein the court decreed enforcement against a defendant whose breach occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint. Ceresia v. Mitchell, Ky., 242 S.W.2d 359 (involved business restraint); Fullerton Lumber Co. v. Torborg, 270 Wis. 133, 70 N.W.2d 585 (involved post employment restraint); Redd Pest Control Co. v. Heatherly, 248 Miss. 34, 157 So.2d 133 (post employment restraint); Martinez v. Martinez, 41 Cal.2d 704, 263 P.2d 617 (business restraint). Igoe v. Atlas Ready-Mix, Inc., N. D., 134 N.W.2d 511, 518 (business restraint and North Dakota statute).

We have had the benefit of excellent briefs from both coun-

sel. Plaintiffs have furnished many citations. We have read all of them. Among such decisions are: Hill v. Central West Public Service Co., 5 Cir., 37 F.2d 451; Edwards v. Mullin, 220 Cal. 379, 30 P.2d 997; Foltz v. Struxness, 168 Kan. 714, 215 P.2d 133, and citations; Conforming Matrix Corp. v. Faber, 104 Ohio App. 8, 146 N.E.2d 447; Eldridge v. Johnston, 195 Ore. 379, 245 P.2d 239; Pennsylvania Funds Corp. v. Vogel, 399 Pa. 1, 159 A.2d 472; Plunkett Chemical Co. v. Reeve, 373 Pa. 513, 95 A.2d 925, 43 A. L. R.2d 91.

 However, we do not believe the approach suggested, meritorious as it may be under appropriate circumstances, should be applied in the present case. The validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained between the interest of the employer and the employee.

It is important to note that courts recognize a distinction between restrictive covenants as they relate to the ordinary commercial transaction involving business or property transfers and those which relate to employment contracts entered into by wage earners. A different measure of reasonableness is used. Bennett v. Storz Broadcasting Co., supra, 134 N.W.2d at 899.

We adopt the following language of the New Jersey court in Hudson Foam Latex Products, Inc. v. Aiken, supra, 82 N. J. Super., at 516, 198 A.2d, at 141:

"It must be remembered that restrictions such as those included in [paragraphs 3 and 4 of the present contract] * * * often go unchallenged. Employees, believing themselves bound by the restrictions in their employment contracts, no matter how broadly stated, may be intimidated by such language to the extent of forbearing gainful employment in positions which ostensibly fall within the covenant, perhaps thereby allowing their best talents to go unused. Employers should not be permitted to include the broadest possible restrictions in an employment contract, thus achieving the greatest possible amount of protection for themselves, to the unreasonable restriction of an employee's right to use his skills to the best advantage, and then be enabled to enforce so much and so many of the restric-

496

tions as can be found by a court to be reasonable under the circumstances. If such were the rule, it would afford employers an unconscionable advantage over their employees."

Defendant's other contentions need not be considered.

The dismissal of plaintiffs' petition is—Affirmed.

All JUSTICES concur.