MA & PA, INC., an Iowa Corporation, Appellee,

v.

Robert J. KELLY, Jr., Appellant.

No. 83–174.

Supreme Court of Iowa.

Jan. 18, 1984.

Frank Murray Smith, Des Moines, for appellant.

David D. Dixon of Heslinga & Heslinga, Oskaloosa, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves a covenant in an employment contract prohibiting competition after termination of the employment. The action is in equity and we review de novo. *Baker v. Starkey*, 259 Iowa 480, 144 N.W.2d 889 (1966).

From the evidence we find the facts as follows. Russell Buchanan has had about twenty-three years experience in the petroleum business. Approximately ten years ago he established plaintiff Ma & Pa, Inc., in Oskaloosa, Iowa, to sell petroleum products and some other lines. The corporation operates mainly in central and southeast Iowa. Through work, ability, and investment of capital, Buchanan developed a thriving business. At the time in question Ma & Pa had customers in some ninety-seven municipalities. Sales personnel of Ma & Pa were required to sign a covenant not to compete upon termination of employment.

A major part of the business is the sale through a salesperson of petroleum products to bulk users such as factories and transportation firms. Ma & Pa had developed established customers and also continually strove to obtain new ones.

Defendant Robert J. Kelly, Jr., had experience in sales work but not in petroleum sales. After investigation, Buchanan hired Kelly in July 1979 on salary and commission to work for Ma & Pa as salesman of bulk petroleum products. Buchanan told Kelly he would have to sign an agreement not to compete. Subsequently Kelly did sign such a covenant, which states:

> In consideration of mutual promises and employment terms, Employee agrees that on termination of his employment with Employer for any cause whatever, he will not, directly or indirectly, engage in any manner whatsoever in the retail and wholesale sales and distribution of petroleum products, or any other line of business in which the employer may then be engaged, within a twenty-five mile radius of any then current operations of the Employer for a period of three years.

Buchanan taught Kelly the business, revealed to him the customer lists, and provided him with suppliers' informational literature for study. Kelly proved to be a valuable asset to the business, and did well. He contacted old and potential customers and achieved good sales results throughout Ma & Pa's territory. An important element of the salesperson-customer relationship is trust and confidence, and Kelly developed rapport with the trade.

In 1982 a change in market conditions and product margins occurred in the petroleum industry. Ma & Pa could not continue with Kelly's commissions as written: Kelly made money on his sales but Ma & Pa lost money. Ma & Pa dismissed Kelly, and in the process Buchanan reminded Kelly of his covenant not to compete.

Kelly took a job with a competing oil company. Representing that company, he contacted customers of Ma & Pa, underbid it, and took business away from it, including some of its largest customers. Ma & Pa thereupon commenced this action to enforce the covenant not to compete. The trial court granted an injunction accordingly. Kelly appealed.

In recent years this court has considered several covenants prohibiting competition incidental to employment contracts. Decisions upholding such covenants or ordering trial on them include *Tasco, Inc. v. Winkel*, 281 N.W.2d 280 (Iowa 1979) (reversing summary judgment for employee); *Farm Bureau Service Co. v. Kohls*, 203 N.W.2d 209 (Iowa 1972) (covenant enforced to ex-

**502**

tent found reasonable); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, *supp. opinion*, 190 N.W.2d 413 (Iowa 1971) (same); *Orkin Exterminating Co. v. Burnett*, 259 Iowa 1218, 146 N.W.2d 320 (1967); *Cogley Clinic v. Martini*, 253 Iowa 541, 112 N.W.2d 678 (1962); and *Federated Mutual Implement & Hardware Ins. Co. v. Erickson*, 252 Iowa 1208, 110 N.W.2d 264 (1961). Decisions refusing to uphold such covenants under the facts are *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376 (Iowa 1983); *Baker v. Starkey*, 259 Iowa 480, 144 N.W.2d 889 (1966); *Mutual Loan Co. v. Pierce*, 245 Iowa 1051, 65 N.W.2d 405 (1954); and *Brecher v. Brown*, 235 Iowa 627, 17 N.W.2d 377 (1945), *overruled, Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, *supp. opinion*, 190 N.W.2d 413 (Iowa 1971). *See also Pathology Consultants v. Gratton*, ⸺ N.W.2d ⸺ (Iowa 1984) (partnership of physicians); *Van Hosen v. Bankers Trust Co.*, 200 N.W.2d 504 (Iowa 1972) (attempted forfeiture of pension); *Kunz v. Bock*, 163 N.W.2d 442 (Iowa 1968) (covenant in connection with sale of business); *Insurance Agents, Inc. v. Abel*, 338 N.W.2d 531 (Iowa App.1983) (covenant held unsupported by consideration); *Kroeger v. Stop & Shop Companies, Inc.*, 13 Mass. App. 310, 432 N.E.2d 566 (1982) (attempted forfeiture of deferred compensation; *cf. Van Hosen, supra*).

We summarized the applicable principles as follows in *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983) (citations omitted):

> The general rule in Iowa is that we will enforce a noncompetitive provision in an employment contract if the covenant is reasonably necessary for the protection of the employer's business and is not unreasonably restrictive of the employee's rights nor prejudicial to the public interest. Our rule is analogous to the Restatement rule which provides that a noncompetitive agreement is unreasonably in restraint of trade if "(a) the restraint is greater than is needed to protect the promisee's legitimate interest or (b) the promisee's need is outweighed by the hardship to promisor and the likely

injury to the public." Essentially, these rules require us to apply a reasonableness standard in maintaining a proper balance between the interests of the employer and the employee. Although we must afford fair protection to the business interests of the employer, the restriction on the employee must be no greater than necessary to protect the employer. Moreover, the covenant must not be oppressive or create hardships on the employee out of proportion to the benefits the employer may be expected to gain. The burden of proving reasonableness is upon the employer who seeks to enforce such a covenant.

A factor in this case not present in most cases is the discharge of Kelly by Ma & Pa as distinguished from a resignation originating with Kelly. Under some circumstances termination of the employment by Ma & Pa would not invalidate the covenant not to compete. *See Wark v. Ervin Press Corp.*, 48 F.2d 152 (7th Cir.1931); *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154 (1930); *Red Star Yeast & Products Co. v. Hague*, 25 Ohio App. 100, 157 N.E. 393 (1927). On the other hand discharge by the employer is a factor opposing the grant of an injunction, to be placed in the scales in reaching the decision as to whether the employee should be enjoined. *Holloway v. Brown*, 171 Ga. 481, 155 S.E. 917 (1930); *Economy Grocery Stores Corp. v. McMenamy*, 290 Mass. 549, 195 N.E. 747 (1935); *Matheney v. McClain*, 248 Miss. 842, 161 So.2d 516 (1964); *Edward Brown, Inc. v. Astor Supply Co.*, 4 A.D.2d 177, 164 N.Y.S.2d 107 (1957); *American Ice Co. v. Hunter*, 60 Pa.Super. 311 (1915); *Southern Properties, Inc. v. Carpenter*, 21 S.W.2d 372 (Tex.Civ.App. 1929); *Dutch Maid Bakeries v. Schleicher*, 58 Wyo. 374, 131 P.2d 630 (1942).

Other factors in the case, although not decisive in themselves, militate against the grant of an injunction. An injunction would work severe hardship on Kelly and his family. Selling is his only skill; he tried to find employment for three weeks before he located the other job; and his

employment with Ma & Pa was terminated during recession. Ma & Pa did not show at trial that it tried to renegotiate Kelly's employment contract. The employment was at will, enabling Ma & Pa to terminate it at any time and assert the clause prohibiting competition. *See Rousana Co. v. Garland,* 204 F.Supp. 70 (D.P.R.1962); *Menter Co. v. Brock,* 147 Minn. 407, 411, 180 N.W. 553, 555 (1920); 14 *Williston on Contracts* § 1643, at 154 (3d ed. 1972). The business Kelly obtained for his new employer does not appear to have derived so much from his personal influence as Ma & Pa's uncompetitive pricing. Finally, the bulk users of petroleum products in the territory must be ascertainable by reasonable diligence without a customer list.

■ Ma & Pa is correct that it did not breach the contract and is not disentitled to rely on the non-competition clause on that account. It is also right that the clause recites "on the termination of his employment with Employer for any cause whatever...." Moreover, Ma & Pa did not terminate the contract without any cause; it lost money on Kelly's sales. Nonetheless, the case is in equity, and upon weighing the equities on both sides in our de novo review we conclude that the trial court should not have granted the injunction. See Blake, *Employee Agreements Not To Compete,* 73 Harv.L.Rev. 625, 684–86 (1960).

REVERSED.