## RED STAR YEAST & PRODUCTS CO. *v.* HAGUE.

*Contracts—Notarial act unnecessary to charge employe with knowledge of terms—Salesman's contract may be terminated at end of month without notice, when—Mutuality of right to terminate contract established by accepting salary—Contract prohibiting diverting customers reasonable and enforceable by injunction—Restriction against diverting customers for six months after employment terminated—Applies solely to employe and not dependent upon voluntary leaving—Manner of terminating employment immaterial if employer without fault—Whether discharge justifiable immaterial in injunction proceeding, when.*

1. Contract, employing salesman, and prohibiting him from diverting employer's customers during employment or within six months thereafter, need not, as matter of law, be clothed with notarial act, enjoining on employe full knowledge of terms of contract.

2. Contract, employing salesman at monthly salary, is a month to month employment, and containing no provision as to notice, can be terminated and canceled, by mutual consent or otherwise, at end of each month without notice.

3. Under contract employing salesman on a month to month basis, acceptance by salesman of salary in full for month at beginning of which he severed relations established mutual intent of parties that either had right to terminate contract at end of any month for any reason whatsoever.

4. Contract, employing salesman on month to month basis, and providing that salesman shall not divert employer's customers during employment or within 6 months thereafter, *held* reasonable, in view of employment for over 14 months, and restriction limited to particular city is enforceable against employe by injunction.

5. Under contract of employment providing that employe shall not divert employer's customers in city during employment and for 6 months thereafter, such restriction was covenant in negative and applied strictly and solely to employe.

6. Under contract prohibiting employe diverting employer's customers for 6 months after "leaving its service from whatsoever cause," word "whatsoever" is an indefinite relative, defined as "all that, no matter what, anything soever which," and prohibits employe from engaging in competition, regardless of person or thing which separates employment, whether voluntary or involuntary, and is not confined to voluntary leaving alone.

7. Under contract for employment prohibiting employe from engaging in competition within 6 months after leaving employer's service from whatsoever cause, it is immaterial in what manner relationship was severed, providing employer seeking to enforce provision was not responsible for breach thereof.

8. In action by employer to enjoin employe from engaging in competitive business under contract prohibiting such competition by employe for 6 months after leaving employment from whatsoever cause, it was immaterial whether discharge was justifiable.

(Decided February 7, 1927.)

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Calfee, Fogg & White*, for plaintiff.
*Messrs. White, Cannon & Spieth*, for defendant.

SULLIVAN, P. J.   This cause is here on appeal and an injunction is sought to prevent the defendant, Clarence D. Hague, from engaging in a business in competition with the plaintiff, Red Star Yeast & Products Company, because of the following terms and provisions of the restrictive covenant in a contract executed between the parties October 26, 1925:

"This agreement made this 26th day of October, 1925, between Red Star Yeast & Products Company of Milwaukee, Wis., party of the first part, and Clarence David Hague, party of the second part,

witnesseth: That the party of the first part does hereby employ the party of the second part, as salesman for its compressed yeast, in the city of Cleveland, state of Ohio, and to perform such other duties as may be required of him, and agrees to pay him $200 per month, and such additional wages or commissions, if any, as may from time to time be agreed upon. $200 per month first 60 days; $225 per month for 180 days; thereafter $250 per month.

"And the party of the second part, in consideration thereof, doth hereby agree to use all diligence in his power to make and keep trade for the party of the first part, and that he will not at any time while in its employ, or within six months after leaving its service from whatsoever cause, for himself or for any other person or company, sell, dispose of, or give away any compressed yeast, to any person or persons, and that he will not in any way, directly or indirectly, divert, take away, or attempt to divert or take away, any of the customers or patronage of the party of the first part, in the city of Cleveland, state of Ohio, within the above specified period of six months. Red Star Yeast & Products Company (Yeast Department), by B. A. Bergenthal, President. [Seal.] Clarence D. Hague. [Seal.] Witnesses: E. N. Kaester, James P. Burns.

"State of Ohio, Cuyahoga County, ss.:

"Clarence D. Hague, being duly sworn, says that the foregoing agreement is subscribed to with a full knowledge and understanding of its contents. Clarence D. Hague. (Signature.)

"Subscribed and sworn to before me this 26th

day of October, 1925. Otto C. Beranek, Notary Public.''

We refer to the contract in its entirety because it has the solemnity of an oath, as bearing upon the sanctity which was obviously intended by the parties, because it was unnecessary, as a matter of law, to clothe the document with a notarial act that enjoined upon the defendant the full knowledge as well as the understanding of the terms of the contract.

This is what is known as a month to month employment, and therefore the contract could be terminated and canceled under the terms and provisions thereof, by mutual consent or otherwise, at the end of each month. There is no provision as to notice, and none is necessary, for the reason that the contract itself is authority for its cancellation before the obligations of a succeeding month ensue.

On the question of the validity of such a contract, it is doubtful if it would be held valid if we reasoned from its terms alone, because the defendant in the restrictive covenant is restricted to a period of time involving 6 months, when circumstances might arise that would sever the relationship in one month or less. This fact gives the contract the complexion of being unreasonable, even though its restriction covers specific territory, as well as specially providing as to time.

However, inasmuch as the record discloses that the relationship under the contract between the parties extended over a period of some 14 months, this fact injects an element into the case which compels us to consider the equities in this respect,

as they appear from the actual record, and not solely from the terms of the contract itself.

The plaintiff, it appears, severed relations on the 5th of November, 1926, and it also appears that the defendant accepted his salary in full for that month. This fact creates a legal status between the parties of such a nature that it clearly establishes what was the mutual intent of the parties under the terms of the contract; namely, that the plaintiff, as well as the defendant, had the right to terminate the contract at the end of any month, for any reason whatsoever, because such right is inherent in the contract itself, whose terms provide employment on a month to month basis. The contract itself is valid because of the reasonableness of its provisions, considered in the light of the record, and, inasmuch as the restriction is limited to time and place, it has the sanction of the courts.

This court has repeatedly held valid contracts of a character such as the one at bar.

A similar holding is found in *Jewel Tea Co.* v. *Wilson,* 20 C. C. (N. S.), 233. Thus it is the established doctrine in Ohio that contracts of such character as the one at bar are valid and binding upon the parties.

The first point raised by appellant is that the clause in the contract, "Leaving its service for whatsoever cause," means a severance of the relationship of employer and employe for any reason that may arise. The defendant contends that, by virtue of the significance of the word "leaving," the clause refers only to a voluntary leaving.

In order to determine the meaning of the language under discussion we are more apt to arrive at the truth by examining the terms of the contract

as to the intention of the parties, than by reliance upon the technical definitions which may be given by the dictionaries, because often a word with a distinct meaning is extended in its scope and significance by such universal use that thereby its definition is enlarged and broadened to meet the requirements of the particular transaction in which we find it used. It is obvious from the terms of the contract that the employer was seeking first of all to protect itself for a period of at least 6 months from any advantage which its competitors might gain and profit by employment of the defendant.

The terms of the contract bristle with the mutual intention of the parties that the employment depended upon compliance with the 6 months provision, which appears in the contract as a restriction. It is a covenant in the negative and applies strictly and solely to the employe.

From an examination of the clause in question, it is apparent that the parties either through themselves or counsel were aware of the conflicting authorities as to the intendment and interpretation of the specific language. It is a plain inference derivable from the language itself that the parties mutually intended to put the question of the severance of relationship beyond any doubt whatsoever, and therefore they incorporated the following language, to-wit: "Leaving its service for whatsoever cause." The word "whatsoever" has a distinct meaning and it is of such breadth that it is without boundary. It is an indefinite relative and is often defined as "all that; no matter what." Again, it is used substantively as "anything soever which."

In truth, there is no authority that defines the word as definitely as the word itself. The word "whatsoever," in its relation to the other language of the contract, means that the employe shall not engage in competition, regardless of the person or thing which separates the relationship. There is no such idea in its definition as that conveyed by the word "voluntary," or "involuntary." Therefore it gives a meaning to the word "leave," which, standing alone, it would not have. "Whatsoever cause" means any cause, and any cause means a cause that is involuntary as well as one that is voluntary.

Again adverting to the language itself it is logically deducible therefrom that the intent of the parties to protect the plaintiff against competition would be frustrated and of no avail if such a narrow definition was given to the word "leave" as to limit it to leaving upon the volition of the employe, because then if competitors tempted the employe he could release himself from the obligations of his contract by leaving the employer at his own sweet will, and thus be the arbiter of his own case. There is no such weakness or frailty in the terms of the contract by which it would become possible for the employe to destroy the efficacy of the restrictive covenant.

We do not think it is material, under the terms of the contract and the record, in what manner the relationship was severed, providing that the breach thereof be not laid at the door of the plaintiff in the case, who seeks protection under this disputed clause in the contract.

We think *Mutual Milk & Cream Co.* v. *Heldt*, 120 App. Div., 795, 105 N. Y. S., 661, similar to the case

at bar, and that it bears out the construction which we seek to give the language in controversy. When the employe in effect was tendered and had accepted the pay for the last month's service, he created a situation, in our judgment, substantially equivalent to a severance of mutual relations by one party or both parties, under the terms of the contract, at the expiration of the month, and this view makes it unnecessary to discuss the question whether the discharge was justifiable.

In *Mutual Milk Co.* v. *Heldt, supra,* we quote the syllabus, as follows:

"Plaintiff employed defendant as a driver to deliver and collect for milk and cream under a contract providing that each should give the other one week's notice of termination of the employment. The contract also declared that defendant would not, on behalf of himself or any one else, solicit orders for or serve milk or cream to any of complainant's customers for 36 months from the date of his leaving complainant's employment. *Held,* that such provision was an independent covenant, based on a sufficient consideration, which plaintiff was entitled to enforce by injunction, though defendant had been discharged, without the requisite notice; plaintiff having tendered a week's pay instead, which defendant refused."

Holding these views, a decree may be entered for the plaintiff.

*Judgment for plaintiff.*

LEVINE, J., concurs.
VICKERY, J., not participating.