**Edgar M. SPEARMAN, Plaintiff,**

v.

**DELCO REMY DIVISION OF GENERAL MOTORS CORPORATION, Defendant.**

**No. IP 87–376–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

June 19, 1989.

Supplemental Opinion July 10, 1989.

Calvin K. Hubbell, Valparaiso, Ind., for plaintiff.

Herbert C. Snyder, Jr., Barnes & Thornburg, Indianapolis, Ind., for defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on the plaintiff's motion for partial summary judgment and the defendant's response thereto. The issues raised have been thoroughly briefed and are ready for resolution. For the reasons set forth below, the Court GRANTS the plaintiff's motion for partial summary judgment on Count One and DENIES the plaintiff's motion for a separate trial on the issue of damages. The Court orders further briefing on the issue of damages, as set forth below in the opinion, and GRANTS summary judgment to defendant on plaintiff's claim for punitive damages in Count One.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Edgar Spearman, an Indiana resident, filed this diversity action against Delco Remy alleging two separate but related causes of action.[1] In Count One plaintiff charges that Delco wrongfully discharged him, and in Count Two alleges that Delco defamed him. Spearman seeks damages of $850,000 in Count One plus punitive damages of one million dollars, as well as $500,000 of compensatory damages in Count Two plus one million dollars of punitive damages.

Plaintiff has filed a motion for summary judgment as to the wrongful discharge allegations of Count One, arguing that Delco Remy is collaterally estopped from relitigating the issue of whether Spearman was discharged for cause. Spearman bases this argument on the administrative finding made by the Review Board of the Indiana Employment Security Division that he was not discharged for cause.

The material facts surrounding this issue are, as defendant concedes, undisputed, and can be summarized as follows:

Delco Remy operates a manufacturing facility in Anderson, Indiana. In 1954, plaintiff Spearman commenced employment with Delco Remy in an hourly, non-supervisory position. After 23 years with Delco, Spearman was promoted to a supervisory position. Specifically, on June 16, 1977, Delco and Spearman entered into a written "Employment Agreement" under which Spearman agreed to devote his time and service to Delco in consideration of a monthly salary. The Employment Agreement also contained the following provisions:

2. The Employee acknowledges that his employment under this agreement is from month to month only on a calendar month basis.

3. In consideration of the services to be performed ..., the Employer agrees to pay the Employee ... as long as the employment under this agreement continues, compensation at the monthly rate set forth on the 'Compensation Statement', signed by the Employee, accepted by the Employer, and on filed in the Payroll Records of the Employer....

6. The Employer and the Employee acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, or other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employee and Employer.

See "Employment Agreement." A copy of the "Compensation Statement" for 1985 has been produced by plaintiff and recites that plaintiff's compensation rate was $3,140.28 per month.

On Friday, March 29, 1985, Spearman was verbally discharged by Delco Remy. Delco cited Spearman's involvement in Delco Remy's purchase of packaging crates from S & T Specialties, a company with which Spearman's stepson was affiliated. Delco Remy charged Spearman with improperly using a position of trust and confidence for personal benefit or the benefit of others.

Spearman thereafter filed an application for unemployment benefits with the Indiana Employment Security Division, and was initially granted benefits on July 17, 1985. Delco Remy appealed to an Appeals Referee, and a hearing was held on September 18 and October 4, 1985. Plaintiff was present at the hearing and was represented by counsel, and plaintiff called three witnesses to testify on his behalf. Delco Remy was represented by counsel and called five witnesses to testify. On October 21, 1985, the Appeals Referee reversed the award of benefits in a four page written opinion. The Referee concluded that under *Ind. Code Ann.* § 22–4–15–1(d)(8) which defines discharge for just cause to include "any breach of duty in connection with work which is reasonably owed an

---

1. The action was originally filed in state court and was removed to federal court on diversity grounds. It is undisputed that Indiana substantive law applies to this action.

employer by an employee," Spearman's discharge for violating a duty of loyalty was for just cause. Thus, the Referee concluded, Spearman was not entitled to unemployment benefits.

Spearman thereafter appealed to the Review Board, and a hearing was held on May 22, 1986, before three Board members. Plaintiff appeared in person with his attorney and Delco Remy was represented by its attorney and two employees. The three-person Review Board reversed the Referee and determined in a two page written opinion that Spearman's discharge was not for just cause. Delco Remy appealed the matter to the Indiana Court of Appeals, which unanimously affirmed the Review Board's conclusion. *See Delco Remy v. Indiana Employment Security Division,* 503 N.E.2d 1251 (Ind.App.1987). Delco Remy's petition to transfer was later denied as well.

## II. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.Proc. 56(e).

While these rules were formerly viewed with some hostility by the federal courts and were sparingly used in disposing of insufficient claims or defenses, *see, e.g., Poller v. Columbia Broadcasting System,*

*Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court has more recently instructed the district courts to follow the mandatory aspects of Rule 56 and enter summary judgment where appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The *Celotex* Court wrote:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. The Seventh Circuit has noted and readily embraced the change in attitude towards Rule 56. *See, e.g., Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988). *Morgan v. Harris Trust and Savings Bank,* 867 F.2d 1023, 1026 (7th Cir.1989) ("When a rational trier of fact could not find for the nonmoving party based on the record as a whole, there is no trial issue.").

With these standards at hand, the Court will address each of the issues raised.

## III. ANALYSIS

In his motion for summary judgment on liability under Count One, plaintiff first argues that Delco Remy should be estopped from relitigating the issue of whether the discharge was for just cause. Then, later in his motion, he asserts that the employment agreement required just cause for dismissal because Delco Remy's "Policy and Procedure" Manual, which plaintiff admits he has never seen, recites that there must be "some reason" for discharging an employee.

While the parties' respective arguments are both compelling and well reasoned, the proverbial cart has been placed before the horse. That is to say, prior to reaching the

issue of collateral estoppel, which relates only to whether the discharge was for just cause, it is first necessary to determine whether such cause was even required. The Court will thus first address what the terms of the employment agreement were, and will then focus on the just cause issue.

A. *The Contract Required Cause for Dismissal:*

Under Indiana law there are two basic types of employment relationships: (1) employment at will, *see, e.g., Mead Johnson and Co. v. Oppenheimer,* 458 N.E.2d 668 (Ind.App.1984), and, (2) employment for a definite term. *See e.g., Peterson v. Culver Educational Foundation,* 402 N.E.2d 448 (Ind.App.1980). The initial issue in this case is what type of relationship existed between Delco Remy and Spearman.

Resolution of this issue is made simple in this case by the fact that the parties do not dispute that the "Employment Agreement" dated May 1, 1977, applies to each of them. In that Agreement, the parties acknowledged that Spearman's employment was "from month to month only on a calendar month basis." No other provision in the contract spoke to termination. Accordingly, the only possible construction of the contract[2] is that it is for a definite term each month, and renewable at will at the start of the next month. That is to say, once the calendar month of, say, June begins, the parties are bound by the agreement for the duration of June only. Neither party is bound for the month of July until that month begins.

**2.** Where, as here, there is no ambiguity in the terms of the contract, the Court construes the agreement as a matter of law. *Kokomo Veterans, Inc. v. Schick,* 439 N.E.2d 639, 643 (Ind. App.1982).

**3.** The Court notes as a side that plaintiff's arguments concerning statements of Delco officials regarding firing policies and statements in the Personnel Manual are probably without merit because of the effect of the integration clause in the Employment Agreement. *See generally Franklin v. White,* 493 N.E.2d 161, 166–67 (Ind. 1986); *Erie Corp. v. Washington Square Restaurant, Inc.,* 318 N.E.2d 367, 369 (Ind.App.1974); *Corbin on Contracts* § 573 (1952).

Under a contract such as this that is for a definite term but does not speak to termination, the employer may not avoid its contractual obligations prior to the end of the relevant period absent cause or agreement of the parties. *Peterson v. Culver Educational Foundation,* 402 N.E.2d 448, 451 (Ind.App.1980); *Seco Chemicals, Inc. v. Stewart,* 349 N.E.2d 733, 738 (Ind.App. 1976); *Rochester Capital Leasing Corp. v. McCracken,* 295 N.E.2d 375, 378 (Ind.App. 1973). As the Court of Appeals succinctly stated in *Seco Chemicals,* "Where, as here, there is an employment contract for a definite term in which the employer has not reserved the right to terminate the employment before the conclusion of the contract, the employment 'may not be terminated before the expiration of such term except for cause or by mutual agreement.'" 349 N.E.2d at 738 (*quoting McCracken,* 295 N.E.2d at 378).

In this case, then, the Employment Agreement between the parties could not be terminated without just cause during any month in which employment had commenced. Thus, the plaintiff's arguments concerning the effect of statements by Delco officials and language in the Personnel Manual concerning just cause need not be reached. Under Indiana law, cause was required to discharge Mr. Spearman during the relevant month because the contract was for a definite term and did not speak to termination.[3]

The next issue in this litigation, then, is whether Delco's discharge of Spearman was made for just cause.

Moreover, even assuming arguendo that the integration clause were without effect, it is questionable whether the evidence relied upon by plaintiff could imply the just cause requirement. *See generally* Annot., *Right to Discharge Allegedly At–Will Employee as Affected by Employer's Promulgation of Employment Policies as to Discharge,* 33 A.L.R. 4th 120 (1984); *Streckfus v. Gardenside Terrace Co-op., Inc.,* 504 N.E.2d 273 (Ind.1987). *But see Mead Johnson,* 458 N.E.2d at 671 (court's statement that "Employee handbooks are immaterial without an enforceable agreement between the employer and employee of employment for a definite duration" suggests that such handbooks are material where, as here, there is a definite term of employment).

**B.** *The Factual Issue of Just Cause Has Already Been Decided:*

It is settled in Indiana that the question of whether an employee was fired for just cause is ordinarily a question of fact. *Von Gonten v. Research Systems Corp.*, 739 F.2d 1264, 1267 (7th Cir.1984); *McCracken*, 295 N.E.2d at 378. Thus, the just cause issue is usually inappropriate for determination on summary judgment. In this case, however, an administrative level trier of fact composed of three persons has previously decided this factual issue in favor of the plaintiff, and for the reasons set forth below, this Court finds that the administrative decision bars further litigation of the issue.

■ Under Indiana law,[4] the doctrine of res judicata is recognized as having two distinct branches, that of claim preclusion (traditionally known as res judicata) and that of issue preclusion (known as collateral estoppel). *See generally* Pitts, Stuart, *McClanahan v. Remington Freight Lines Making a Mountain out of a Molehill*, 22 Ind.L.Rev. 1 (1989) [*hereinafter McClanahan Survey Article*]. While res judicata precludes relitigation of entire legal claims, the doctrine of collateral estoppel operates to bar the relitigation of a factual issue that has been determined in a prior proceeding. In this instance, Spearman attempts to use the latter doctrine and collaterally estop Delco Remy from relitigating the issue of just cause that was decided in the administrative proceeding concerning unemployment benefits.

Although the boundaries of applying administrative decisions to court litigation are not well defined in Indiana, the Indiana Supreme Court has confirmed that the doctrine is recognized in this State. In *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390 (Ind.1988), the court made it clear that administrative collateral estoppel, which has gained broad acceptance elsewhere, *see McClanahan Survey Article*, 22 Ind.L.Rev. 2–13, is at least applicable in some cases. Although the *McClana-*

han court did not apply the doctrine to the case then before it "[b]ecause of the unusual circumstances" present, it specifically stated that "some administrative proceedings may estop relitigation in subsequent civil proceedings...." *McClanahan*, 517 N.E.2d at 394. *Cf. Cox v. Indiana Subcontractors Ass'n.*, 441 N.E.2d 222, 226 (Ind.App.1982) (Although Court of Appeals rejected application of administrative finding to estop relitigation in judicial proceeding, Court of Appeals noted that "we do not reject the doctrine of administrative res judicata." "The doctrine is simply inapplicable to resolve a case as complex as the present one.").

■ The *McClanahan* court confirmed that the basic standards for "administrative collateral estoppel" are as follows:

1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency;

2) whether the agency was acting in a judicial capacity;

3) whether both parties had a fair opportunity to litigate the issues;

4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal.

*McClanahan*, 517 N.E.2d at 394. To this must be added two implicit requirements of all types of collateral estoppel, namely, that the parties are the same and that the issues sought to be barred are the same. *See Cox*, 441 N.E.2d at 225–26; *McClanahan Survey Article*, 22 Ind.L.Rev. 2.

■ In this case the Court finds that all six requirements are met. The only requirements that merit discussion are: (1) whether the issue is the same; (2) whether both parties had a fair opportunity to litigate the issue; and, (3) whether the agency was acting in a judicial capacity.

1. The same issues are presented:

■ The general issue before the Indiana Employment Security Division was whether Spearman was entitled to unem-

---

4. Federal courts sitting in diversity are to apply state law to determine the collateral estoppel effects of proceedings in state tribunals. *Na-* *than v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir.1977); Annot., *Law Governing Res Judicata*, 19 A.L.R.Fed 709 (1978).

ployment benefits. More specifically, though, the state agency was concerned with whether Spearman "was discharged for just cause in connection with work within the meaning and intent of Chapter 15-1 of the Act for breaching the duty reasonably owed the employer by failing to disclose to employer that a subcontractor performing work for the employer was his stepson." *Decision of Review Board* at 1. That is, the issue at the administrative level was whether, under *Ind. Code Ann.* § 22-4-15-1(a), Spearman was "discharged from his employment for just cause...."

The same issue is now before this Court. The key issue on the discharge claim is whether Spearman was discharged from his employment for just cause. Any attempts to distinguish the issue before this Court from the factual issue decided at the administrative level are without merit. The fact that the statute for unemployment benefits provides a definition of just cause

does not mandate a contrary finding, for that definition section, by its own terms, is merely illustrative.[5] Moreover, the illustrative definitions set forth in the statute do not differ from those which govern in this contract action.

Specifically, the definition for good cause in *Ind. Code Ann.* § 22-4-15-1(d)(8) pertaining to any "breach of duty in connection with work which is reasonably owed an employer by an employee" is the precise element of "good cause" at issue in this wrongful discharge claim. Accordingly, this Court finds that the factual issue is the same for purposes of collateral estoppel.[6]

2. The parties had a full and fair opportunity to litigate the issue:

 In this case, unlike *McClanahan*, the parties had a full and fair opportunity to litigate the issue. Both parties were represented by counsel (in fact, the same counsel as in this lawsuit) and both parties

---

**5.** The statute provides:

"Discharge for just cause" as used in this section is defined to include *but not to be limited to:* (1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; (2) knowing violation of a reasonable and uniformly enforced rule of an employer; (3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness; (4) damaging the employer's property through willful negligence; (5) refusing to obey instructions; (6) reporting to work under the influence of alcohol or drugs ...; (7) conduct endangering safety of self or co-workers; or (8) incarceration in jail following conviction ... or for any breach of duty in connection with work which is reasonably owed an employer by an employee.

*Ind. Code Ann.* § 22-4-15-1(d).

**6.** To the extent that *Cox v. Indiana Subcontractors,* 441 N.E.2d 222 (Ind.App.1982), suggests a different result, the Court finds that *Cox* is not controlling. The *Cox* court wrote that it was concerned that the Review Board was not the proper authority to determine complex legal issues involving contract interpretation and tort issues. 441 N.E.2d at 226. The defendant's attempt to use administrative collateral estoppel in *Cox,* however, did *not* require that the Review Board address such "complex" issues. Rather, as is true in this case, the party seeking to invoke collateral estoppel was merely seeking to

prevent the relitigation of the narrow "just cause" issue. It is thus not entirely clear how the *Cox* court could, on the one hand, reject the application of administrative collateral estoppel to the specific case before it, but still write that it did not reject the doctrine as a principle of Indiana law. *Accord, McClanahan Survey Article,* 22 Ind.L.Rev. at 21-22 (noting that the *Cox* result is "disturbing because of its lack of rationale.").

The result in the *Cox* case may well be explained on the basis that it was the plaintiff there who had lost at the administrative level and who would have been barred from relitigating the issue before the courts. This seems entirely plausible (though not particularly persuasive), particularly if plaintiff there was not represented by counsel at the administrative level (which seems to be a legitimate rationale regardless of whether plaintiff or defendant is affected). If this was, in fact, the *Cox* court's concern, it is unfortunate that it did not state it in those terms, for that concern goes to the collateral estoppel requirements that each party had a full and fair opportunity to litigate the issue at the administrative level and that the agency was acting in a judicial capacity; *not* to the question of whether the issue sought to be estopped is the same, upon which *Cox* was purportedly decided.

In any event, this Court finds that the Indiana Supreme Court in *McClanahan* has re-established the appropriate standards for administrative collateral estoppel, and that application of these standards mandates the proper outcome in this case.

brought witnesses. Unlike *McClanahan* where no counsel were present and there was a potential conflict of interest, 517 N.E.2d at 395, the just cause issue was vigorously litigated at each administrative level and was ultimately affirmed by the Indiana Supreme Court through denial of transfer. This Court finds that this aspect of collateral estoppel is adequately satisfied.

### 3. The agency was acting in a judicial capacity:

The other implicit concern in *McClanahan* was that the agency was not acting in a judicial capacity. Again, in this case, however, the parties were represented by counsel, witnesses appeared, and detailed written decisions were handed down at each level. The concerns in *McClanahan* that the administrative proceedings were too informal are not present here.

In *McClanahan*, the administrative proceeding at issue occurred before the Referee without counsel. A decision adverse to the defendant was rendered, and no appeal was taken. 517 N.E.2d at 391. In this case, however, counsel were present at the Referee stage, appeal was taken to the three-person Review Board where counsel were again present, and appeal was again taken from that level. Thus, the level and type of administrative proceeding in issue in this case is different from that in *McClanahan*. Here, the relevant administrative decision was made at the three-person Review Board level,[7] whereas in *McClanahan* the decision was at the one-person Referee level.

The importance of this distinction cannot be over-emphasized, for at the end of its opinion in *McClanahan*, the Indiana Supreme Court almost implied that collateral estoppel could not be invoked from decisions of any branch of the Indiana Employment Security Division because of their informality. *McClanahan*, 517 N.E.2d at 395 ("The relative informality of the particular administrative procedure at issue here does not meet the test used in *Cox*. It is a procedure designed for quick and inexpensive determinations of unemployment benefits. * * * Whether other administrative proceedings might qualify under *Cox* is a matter for another day.")

However, the "particular administrative procedure" at issue in *McClanahan* was at a lower and more informal level than present here. Proceedings before the one-person Referee are not final and binding as to factual matters, *Forster*, 420 N.E.2d 1287, they are to be conducted "informally," 640 *Ind.Admin.Code* § 1–11–3 (1988), and such hearings are held at local offices. *Id.* Proceedings before the Review Board, by contrast, are heard by at least three Board members, *Ind.Code Ann.* § 22–4–17–5, they are final and conclusive as to all factual matters, *Ind.Code Ann.* § 22–4–17–12; *Forster*, 420 N.E.2d at 1291, and such hearings are held at the Indianapolis office of the Review Board. Given the relative informality of the Referee's proceedings coupled with all the other problems such as lack of counsel and conflicts of interest present in *McClanahan*, it is understandable why the Indiana Supreme Court did not apply collateral estoppel to that administrative decision.[8]

---

**7.** Under *Ind.Code Ann.* § 22–4–17–5, the Review Board contains five members, one of which must be a licensed attorney. At least three members must be present to hear an appeal. The Review Board has the power to hear the case de novo, *Forster v. Review Board*, 420 N.E.2d 1287 (Ind.App.1981), as occurred in this case.

**8.** The Court notes that the *McClanahan* court's concerns about hearsay evidence coming in (517 N.E.2d at 395) are not present in a case such as this where both sides were represented by counsel. Under the rules for hearings before Referees, which rules have the force and effect of law, *Forster*, 420 N.E.2d at 1289, "hearsay evidence shall not be considered, but the referee shall consider all such hearsay evidence as would be admissible under common law and statutory rules of evidence of courts in this state and may, in his discretion, consider all hearsay evidence of whatever nature to which timely objection is not made by an 'interested party.'" 640 *Ind.Admin.Code* § 1–11–3.

Such hearings are thus just like civil judicial proceedings in that hearsay may be relied upon unless counsel objects to its use. Where, as here, counsel were present, any admission of hearsay at the administrative level is no different from admission of such evidence at the trial court level. Thus, any hearsay-based argument

In this case, however, based on the reasoning of *McClanahan* and the standards set forth therein, this Court is convinced that the Indiana Supreme Court would apply the doctrine of administrative collateral estoppel to the higher-level, more formal administrative decision in this litigation. The tests for administrative collateral estoppel set forth in *McClanahan* are conclusively met, and there is no reason to relitigate the issue of just cause.[9]

### C. *Measure of Damages:*

1. Compensatory damages:

The Court has thus concluded that Mr. Spearman could not be discharged during the working month without just cause. Moreover, the Review Board's finding that Spearman was unjustly fired is binding in this action and bars relitigation of the issue. Thus, the only remaining issue on Count One is the amount of damages, if any, to which Spearman is entitled.

It is settled law in Indiana that the measure of damages for breach of a term employment contract is the "contract price for the unexpired term less what the employee has earned, or by reasonable diligence in mitigation of damages could have earned, in other employment since the discharge." *Department of Natural Resources v. Evans*, 493 N.E.2d 1295, 1302 (Ind.App.1986). *Accord, Pepsi–Cola General Bottlers, Inc. v. Woods*, 440 N.E.2d 696, 699 (Ind.App. 1982); *Hamilton v. Love*, 152 Ind. 641, 53 N.E. 181 (1899). The question in this case, then, is whether Spearman is entitled to any damages for being discharged without cause on Friday, March 29, 1985, the last working day of March of 1985.

Defendant argues that no damages are recoverable, reasoning that no notice is required to terminate such a contract, and impliedly asserting that Spearman received his full monthly salary for the month of March.[10] In support of its position, however, Delco relies solely on a case from Alabama dealing with expiration of a contract of insurance rather than with an employment relationship. *See Employers Insurance Company of Alabama v. Hare*, 292 Ala. 637, 299 So.2d 243 (1974). On the other hand, plaintiff has not provided any authority to the contrary on this issue, and the Court has not located any relevant precedent independently other than the general case law implying a duty of good faith in contractual dealings.

Accordingly, in order to properly address this narrow issue, the Court requests further limited briefing on the question of whether notice was required of the employer in this instance. If notice was not required, then plaintiff is not entitled to any damages (assuming that all of March's salary was paid). If notice was required and was not timely given, then plaintiff would be awarded his salary for April less any amounts he earned or could have earned with due diligence (up to the maximum $3,140.28 that he was earning per month at that time). The Court thus requests the parties to brief this issue in less than ten pages by Friday, June 30, 1989. The parties are also free to submit evidence on whether plaintiff received his full salary for March and whether he earned or could

against invoking administrative collateral estoppel in cases where counsel were present at the agency level is without compelling force.

The Court also notes that at both the Referee and Review Board level, the parties have available many of the same tools as in a court of law, to wit, they can subpeona witnesses, 640 *Ind.Admin.Code* § 1–11–10, they are entitled to discovery from the Employment Security Division, 640 *Ind.Admin.Code* § 1–11–11, they are entitled to have counsel represent them, 640 *Ind.Admin. Code* § 1–11–12, and their proceeding is recorded for preservation. 640 *Ind.Admin.Code* § 1–11–20. The administrative hearing before the Review Board thus greatly resembles a court proceeding.

**9.** This Court thus interprets Indiana law to require a case by case analysis to determine whether administrative collateral estoppel applies. Where, as here, there is more than adequate reason to have confidence in the decision of the administrative agency because of the level of decision and participation of counsel, the doctrine should apply if all other factors are met.

**10.** The Court has not been provided evidence of this fact one way or another and is thus precluded from ruling on this issue at this time.

have earned amounts in mitigation in April.[11]

Depending on the outcome of this issue, the Court will either rule by way of summary judgment or submit the few remaining factual issues to the jury when the defamation claim is tried. The Court in its discretion finds a separate trial on the issue of damages as to Count One unnecessary and thus DENIES the plaintiff's motion for a separate trial under Rule 42(b) of the Federal Rules of Civil Procedure. *See generally* 9 Wright & Miller, *Federal Practice and Procedure* § 2388 (1971) (discussing discretionary nature of Rule 42(b)).

### 2. Punitive damages:

▮▮▮ Finally, the Court hereby GRANTS summary judgment for the defendant on the plaintiff's claim for punitive damages on Count One. In order to recover punitive damages in Indiana, the plaintiff must show by clear and convincing evidence that the defendant's actions were not inconsistent with the hypothesis that the conduct was the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or such other noniniquitous human failing. *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349, 362 (Ind.1982); *Ind.Code Ann.* § 34-4-34-2. The defendant is cloaked with a presumption of innocence, and the evidence must exclude every reasonable hy-

pothesis of innocence. *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019 (Ind. 1986). And, since the Supreme Court's decision in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the heightened burden of proof must be met at the summary judgment stage as well. *See e.g., Reed v. Ford Motor Co.*, 679 F.Supp. 873 (S.D.Ind.1988) (Indiana's clear and convincing standard for punitive damages applies at summary judgment after *Anderson*).

▮▮▮ In this case there is no evidence from which reasonable jurors could find, by a clear and convincing standard, that punitive damages are warranted. The evidence, as taken favorably for the plaintiff, simply does not show a level of conduct that is susceptible to such an award.

IT IS SO ORDERED.

### SUPPLEMENTAL OPINION

▮▮▮ The parties have filed their supplemental briefs and evidence on the issue of whether one month advance notice was required to discharge Spearman. The evidence submitted establishes as a matter of law that Delco Remy paid Spearman his full salary for the month of March in which he was discharged without cause. Thus, the only question is whether Spearman is entitled to any damages for the month of April.[12]

11. Because the total amount in controversy on this issue is approximately $3,000, the Court requests that the parties keep their supplementary memoranda and supporting evidence as direct and brief as possible. If it appears that notice was required, the issue of mitigation is most likely a factual question that cannot be resolved at this stage.

12. Plaintiff makes the argument that he should be entitled to damages up to the present time. This contention, however, completely ignores the well settled Indiana rule discussed previously that the measure of damages for breach of a contract of employment for a definite term is the contract price for the unexpired term less what the employee earned or could have earned with due diligence. *See generally*, I.L.E. *Employment* § 16. The unexpired term in this case can in no instance be more than one month because the contract was a month-to-month agreement.

Plaintiff's arguments concerning the Delco Remy personnel manual are also without merit.

First, it is undisputed that plaintiff never even saw such manuals. Second, the law in Indiana, as in many jurisdictions, is that policy manuals are not ordinarily a part of the parties' agreement. *See, e.g., Rice v. Rent-A-Center of America, Inc.*, 664 F.Supp. 423, 426-27 (N.D.Ind. 1987); *Stratton v. Chevrolet Motors Division*, 229 Neb. 771, 428 N.W.2d 910, 913 (1988) (GM personnel policies not part of parties' employment contract). Finally, there is nothing in the policies that would change the outcome of this case. Rather, they would actually support the defendant's case, for Section 1610 provides that a month-to-month employee may be terminated "at the end of the last working day of any calendar month by giving notice of termination and separation at any time prior to such time." Thus, if the policies were legally binding, all Delco would have had to do was notify Spearman prior to the end of the last working day of the calendar month.

██ Neither the parties nor the Court have been able to locate any Indiana law directly on point. Indeed, the most that can be said about Indiana law in this area is that it continues to adhere to the employment at will doctrine with only a few exceptions, and as such is generally more favorable to employers. The most relevant precedent comes from a 1927 Ohio case. In *Red Star Yeast & Products Co. v. Hague*, 25 Ohio App. 100, 157 N.E. 393 (1927), the Ohio Court of Appeals stated that a month to month employment contract which did not speak to notice of termination can be canceled by either party at the end of each month. The court wrote:

> This is what is known as a month to month employment, and therefore the contract could be terminated and canceled under the terms and provisions thereof, by mutual consent or otherwise, at the end of each month. There is no provision as to notice, and none is necessary, for the reason that the contract itself is authority for its cancellation before the obligations of a succeeding month ensues.

*Red Star Yeast*, 157 N.E. at 394. Thus, Ohio interprets month to month contracts as requiring no notice concerning the next month (April in this case) for the reason that no contractual obligations concerning the succeeding month until it actually begins.

This Court, sitting in diversity and attempting to predict what the Indiana courts would do, finds that Indiana would follow *Red Star Yeast* and hold that no legal obligations arose between Spearman and Delco for the month of April, 1985. In so finding, the Court is mindful of Indiana's general philosophy of employment at will, and notes that Indiana public policy does not proscribe employment contracts allowing discharge without advance notice. *Montgomery Ward & Co. v. Guignet*, 112 Ind.App. 661, 45 N.E.2d 337, 340 (1942) (en banc).

The Court recognizes that this is a seemingly harsh result, but is constrained to predict and follow Indiana law. Plaintiff's analogy to month to month contracts in landlord-tenant relationships is well grounded in policy and could be persuasive to the Indiana Supreme Court. Only through appeal and certification, however, can plaintiff urge what would be a modification of existing law.[13]

Accordingly, although plaintiff did obtain partial summary judgment on Count One as to liability, defendant is entitled to partial summary judgment on damages on Count One. Defendant made full payment for the unexpired term of March, 1985, and no other damages are available. Thus, judgment shall be entered for defendant on Count One, and Count one shall be Dismissed with prejudice.[14]

IT IS SO ORDERED.

13. As should be clear from these opinions, if the Indiana Supreme Court were ever to hear this issue, damages in this case would remain limited to the month of April. The jury would then have to decide whether Mr. Spearman's failure to earn income in April of 1985 was excused by his reasonable diligence to mitigate damages.

14. The Court also DENIES the plaintiff's "Motion to Alter or Amend Judgment."