940 F.2d 665
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elliott C. CUNNINGHAM, Plaintiff-Appellee,
v.
GARY COMMUNITY MENTAL HEALTH CENTER, Incorporated, et. al.,
Defendants-Appellants.
 No. 89-1474.
 United States Court of Appeals, Seventh Circuit.
 Argued June 3, 1991.
Decided July 30, 1991.
 
 Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Elliott Cunningham worked part time for Gary Community Mental Health Center (GCMHC) between 1979 and 1988. During much of that time Cunningham worked without the benefit of overtime pay, vacation time or other benefits promised in GCMHC's personnel manual. Hoping to recover overtime compensation for the hundreds of qualifying hours he worked, Cunningham brought his case to the attention of the Department of Labor (DOL). When GCMHC learned of the resulting investigation, it began harassing Cunningham and causing a deteriorating environment for him at work. Cunningham brought suit in federal court, claiming retaliation under section 215(a)(3) of the Fair Labor Standards Act (FLSA) and attaching a pendent state law claim to recover his denied benefits under the employee's manual. The district court entered summary judgment for Cunningham on the state law claim, and the jury returned a plaintiff's verdict on the FLSA claim. GCMHC appeals both judgments, and we affirm.
 
 I.
 
 2
 On November 20, 1979, Elliott Cunningham signed an agreement with GCMHC accepting a position as a therapist in the emergency services program. The agreement stated that Cunningham's position was part-time, that he would be scheduled on an as-needed basis and that he would not be eligible for employee benefits like those afforded full time employees. Cunningham continued to work for GCMHC until he was discharged in 1988.
 
 
 3
 When Cunningham was hired, GCMHC did not provide any benefits for its part-time employees. David Ciolli, personnel director for the center at that time, informed Cunningham that GCMHC's personnel policies manual would be revised in the future to include some benefits for part-time employees. The manual was in fact revised in November of 1981, and in its new form granted benefits to part-time employees so long as they were scheduled to work at least twenty hours per week. P.Ex.C at 27 & 31. The manual classifies as part-time employees those who are regularly scheduled to work 20-37.5 hours per week. Pl.Ex.C at 1. In the four years following the revision of the manual, it is undisputed that Cunningham was regularly scheduled to work in excess of 20 hours per week. In fact, he was scheduled an average of 27 hours per week and typically picked up additional hours, yet he never received compensation for vacations, sick days or holidays.
 
 
 4
 In early March of 1985, Cunningham contacted the DOL to file a complaint that overtime wages were not being paid. As a result of the complaint, the DOL conducted an investigation which resulted in the payment of back wages to Cunningham and several other GCMHC employees.
 
 
 5
 Coincidental with Cunningham's report to the DOL, GCMHC began to modify Cunningham's hours and working conditions adversely to him. Prior to 1985, Cunningham worked an average of 45-55 hours per week. Between 1985 and 1988, following the DOL investigation, his hours dropped to an average of 13-25 hours per week. Cunningham had been making his own schedule before March of 1985 but subsequently his supervisor, Shirley Nash, completely removed him from the scheduling process. Cunningham was even required to report directly to Nash before starting his shifts after the March investigation; previously, he was permitted to go directly to work.
 
 
 6
 Cunningham also testified to myriad harassments by GCMHC employees, especially Nash. During scheduling discussions with Nash, Cunningham would notify her of his availability. Nash would agree upon hours and then revise the schedule so that Cunningham's shifts conflicted with his other obligations, which included a second job. On several occasions, Cunningham was removed from the schedule altogether. Nash would call Cunningham on the phone both at work and at home, asking him to resign. She would call him into her office and persistently question him about the DOL complaint. Nash also filled out several negative performance evaluations whereas before the investigation, Cunningham had received only good or excellent reviews.
 
 
 7
 Other employees witnessed the retaliation first hand. One of Cunningham's co-workers, Josefa Swanson, testified that, when she asked for vacation time in June of 1987, Nash refused, explaining that Cunningham would not be permitted to cover for her as he was not allowed to work more than 16 hours per week. Denise Travis, Cunningham's supervisor as of May, 1988, overheard Nash on several occasions say that she was going to limit Cunningham's hours, at the same time referring to the DOL complaint. Travis further testified that, in June, 1988, Kenneth Phillips, deputy executive director of GCMHC, told her that Cunningham was going to be fired because he was suing the agency. In a separate conversation, Phillips ordered that Cunningham should be scheduled only one or two shifts per month so that he would "get the message" and quit working.
 
 
 8
 The district court granted partial summary judgment for the plaintiff on the pendent state claim and sent the federal retaliation claim to trial. The jury found that GCMHC violated the Fair Labor Standards Act, 29 U.S.C. Section 215(a)(3), by taking retaliatory measures against Cunningham after he filed a complaint with the DOL. GCMHC appeals both judgments.
 
 II.
 
 9
 We turn first to the disposition of Cunningham's state law claims. Our standard of review of a district court's grant of summary judgment is de novo. New Burnham Prairie Homes, Inc. v. Burnham, 910 F.2d 1474, 1477 (7th Cir.1990). GCMHC argues on appeal that the partial summary judgment, awarding Cunningham damages in lieu of the part-time employee benefits denied him, should be reversed because genuine material issues of fact exist. The district court determined that Cunningham was entitled to benefits pursuant either to Ciolli's oral assertion that the personnel policy would be revised to include benefits or to Section I.1.6. of the revised personnel policies manual, which formally granted those benefits to part-time employees. GCMHC challenges the district court's determination, arguing that the oral assertion was not enforceable under the Indiana Statute of Frauds. We do not need to reach that challenge as we base our analysis on the written manual.
 
 
 10
 It is unclear whether a personnel policies manual has any legal effect in Indiana in promising benefits to part-time employees. Compare Spearman v. Delco Remy Div. of General Motors Corp., 717 F.Supp. 1351 (S.D.Ind.1989) (personnel policy manuals not generally part of parties' agreement) and Mead Johnson and Co. v. Oppenheimer, 458 N.E.2d 668 (Ind.App.1984) (Employee handbooks are immaterial to an employee's "at-will" status) with Tri-City Comprehensive Community Mental Health Center, Inc., v. Franklin, 498 N.E.2d 1303, 1307 (Ind.App.1986) (Garrard, J., dissenting) ("[W]here an employer chooses to adopt and promulgate an employee handbook which specifies employee rights to vacations, holidays with pay, systems for discipline, etc. ... there is an enforceable contract and the employer is not free to unilaterally change the terms retroactively.") and Rose Acre Farms Inc. v. Cone, 492 N.E.2d 61 (Ind.App.1986) (employee who meets requirements for vacation set out in policy sheets will have cause of action for denied vacation). We can assume that the manual in this case was binding, however, since GCMHC did not question in its opening brief the legal foundation for the district court's decision that the written manual provided a basis for the benefits. Therefore, we consider this argument waived. FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1025-6 (7th Cir.1988).
 
 
 11
 Instead, GCMHC offers the affidavit of Donald King, who succeeded David Ciolli as the personnel director in January of 1986. King avers that based on his review of GCMHC's personnel practices, the revised manual did not apply to emergency services workers such as Cunningham. Therefore, Cunningham was not entitled to vacation pay, sick pay or holiday pay. We reject that argument and agree with the district court's conclusion. Cunningham is seeking benefits pursuant to the written personnel policies manual, which contained an unambiguous grant of benefits to all part-time employees. The manual in no way distinguished between emergency and non-emergency personnel with regard to benefit status. Unsupported factual allegations, even in a sworn affidavit, will not necessarily create a material question of fact when they are contradicted by unambiguous contract terms. Cf. Richardson v. Bonds, 860 F.2d 1427, 1433 (7th Cir.1988) ("[A] party cannot create a genuine issue of material fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior depositions or otherwise sworn testimony.").
 
 
 12
 The manual specifically states that part-time employees are eligible to receive benefits. For example, section V.7.1. reads, "All permanent employees who regularly work a schedule of not less than twenty (20) hours per week are eligible for all holidays observed by GCMHC." Pl.Ex.C at 27. Also, section V.12.6(c). states, "Part-time employees accrue vacation in direct proportion to the number of hours normally scheduled to work. Part-time employees whose normal schedule is less than twenty (20) hours per week shall not be eligible for paid vacation." Pl.Ex.C at 31. Neither GCMHC nor King has pointed to any wording in the manual that excludes emergency services workers, such as Cunningham, from the benefit program thus established.
 
 
 13
 We have already concluded that Cunningham falls well within GCMHC's classification of a part-time employee, as it is undisputed that during the years 1981 to 1985, he was regularly scheduled in excess of 20 hours per week. It is similarly undisputed that Cunningham never received vacation days, sick days or holiday pay during that time as required by the manual. Therefore, Cunningham is entitled to receive part-time employee benefits pursuant to Section I.1.6. of GCMHC's revised personnel policies manual. The district court did not err in granting Cunningham's motion for partial summary judgement.
 
 III.
 
 14
 GCMHC also claims that there was insufficient evidence to uphold the jury's determination that the employees violated section 215(a)(3). In order to uphold the jury's verdict awarding damages for lost wages and liquidated damages to the plaintiff, we need only find that the jury had substantial evidence to support its decision. "On appeal from a jury verdict, we are entitled to reverse only if all the evidence points in one direction, and there was a different outcome below." J. Yanan & Assocs., Inc. v. Integrity Ins. Co., 771 F.2d 1025, 1034 (7th Cir.1985) (citation omitted). The jury need not have found that the complaint was the sole, dominant or primary motive, but rather that there was some causal relationship between GCMHC's adverse actions and Cunningham's alleged filing of the complaint, or that the complaint was a motivating factor in the adverse actions. Rakovich v. Wade, 850 F.2d 1180, 1189-90 (7th Cir.) (en banc), cert. denied, 488 U.S. 968 (1988).
 
 
 15
 GCMHC contends that the March schedule was likely made up before Cunningham's complaint to the DOL, and as such could not have resulted from retaliation. Evidence in the record belies this claim. Even if the first revised schedule was in fact made prior to the investigation, it was not until Nash sent out a revised schedule (after March) that Cunningham's hours were drastically reduced. This argument also fails to confront the other contemporary adverse actions taken by GCMHC which began in March of 1985, actions from which the jury might properly have inferred retaliatory motive. It is undisputed that other retaliatory measures--harrassing phone calls, an antagonistic supervisor and an expressed intent to drive Cunningham to resign--were initiated by GCMHC, all of which were detrimental to Cunningham. GCMHC apparently concedes that these changes postdated the DOL investigation, and therefore all are evidence of retaliation.
 
 
 16
 Evidence that the adverse treatment followed closely upon Cunningham's filing of the complaint with the Department of Labor may be sufficient to establish a causal connection. Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1315 (7th Cir.1989). In this case, the working relationship between GCMHC, its personnel and Cunningham appeared to be agreeable prior to March of 1985. It was only after the complaint to and the investigation by the DOL that Cunningham's work conditions suffered.
 
 
 17
 In our view, the plaintiff submitted evidence sufficient for the jury to find in his favor, and we therefore affirm the judgment in this respect.
 
 IV.
 
 18
 GCMHC's other arguments require little discussion. The district court acted within its discretion in awarding liquidated damages in an amount equal to the damages awarded by the jury on the FLSA claim, pursuant to 29 U.S.C. Sec. 216(b) (1988). The mere fact that the judge instructed the jury to add liquidated damages to whatever liability it assessed against GCMHC (instead of waiting until the verdict came back to add the amount himself) is not reversible error. It was the court, not the jury, that exercised discretion in making the liquidated award.
 
 
 19
 The district court also appropriately awarded combined attorney's fees to the plaintiff, including both the state and federal claims. Ind.Code Sec. 22-2-4-4 (1986); 29 U.S.C. Sec. 216(b) (1988). When each of the bases of relief contains a provision for attorney fees, a requirement that the hours be divided and compensation awarded separately for the two claims would complicate matters without any reason. Nor did the district court abuse its discretion in quashing the subpoena defense counsel sought. That subpoena, which requested the law school transcript of the trial judge's own law clerk on the theory that plaintiff's counsel may have been her teacher in law school, would not have advanced the proceedings. A law clerk's duty to her judge is only to alert him to any possibility of bias in any case on which she assists him. Code of Conduct for Law Clerks, Canon 3.D. Nothing of value could therefore be gained from the law clerk's records in law school. The only inquiry appropriate for trial counsel to make therefore is whether the judge himself may have prejudged the litigants; any question of judicial impartiality is more appropriately the subject of a motion for recusal. As for the law clerk's behavior, of which defense counsel complains, we do not believe a few disapproving shakes of the head--if any really occurred--during oral argument away from the jury necessarily suggest bias.
 
 
 20
 The judgment of the district court is therefore AFFIRMED.